**The DOW CHEMICAL COMPANY,**
**Plaintiff,**

v.

**MONSANTO COMPANY, Defendant.**
**Civ. A. No. 5916.**

United States District Court
S. D. Ohio, W. D.

April 26, 1966.

**316**

Edward B. Evans, Cincinnati, Ohio, for plaintiff.

Rynn Berry, New York City, and Robert T. Keeler, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION

JOHN W. PECK, District Judge.

Presently under consideration are an alternative motion for transfer of venue or dismissal filed by the defendant and a motion for inspection and production of documents filed under Rule 34, Federal Rules of Civil Procedure, by the plaintiff. Both motions have been orally argued and exhaustively briefed,[1] and counsel have additionally by letter commented to the Court concerning companion cases in other tribunals and the applicability of decisions rendered during the pendency of these motions. Having made mention of such companion cases, it seems proper to add that a portion of the delay in the disposition of these motions has resulted from the possibility that action in those suits might render the present issues moot.

■ The issues under the alternative motion and the Rule 34 motion are if not actually intertwined at least overlapping. These issues arise out of a highly technical factual pattern. Simply stated, it is the contention of the defendant that no procedure is followed at its plant in this jurisdiction (at Addyston, Ohio) which falls within the contemplation of the complaint, or alternatively that such procedure is practiced primarily by it at its Springfield, Massachusetts, plant and that for the convenience of the parties the cause should be transferred to the district in which it is situated. Plaintiff responds that it has good reason to believe that the process is practiced at the Addyston plant and, in support of its Rule 34 motion, that it should be empowered to make an inspection for the purpose of resolving this issue of fact. As to the non conveniens aspect of defendant's motion (28 U.S.C. § 1404(a)), plaintiff makes the usual response to the effect that it would be as inconvenient for plaintiff to go to the district to which removal is sought as for the plaintiff to come here. In this regard, it presently need only be noted that plaintiff's choice of forum is to be given paramount consideration and that removal should be granted only where movant has clearly demonstrated that on balance the convenience of the

---

1. We have never received more voluminous submissions in connection with such motions, the motions, affidavits and memoranda totaling hundreds of pages. As an example of the extent to which counsel have gone, mention is made of the fact that, presumably because extra copies were desired for extraneous purposes, defendant supplemented some of its typewritten filings by printed copies thereof, and in some other instances filed printed originals.

parties and the interests of justice would thereby be better served.[2]

Involved are styrene polymerization processes practiced by the defendant in alleged infringement of plaintiff's patent. In oral argument counsel for defendant stated that it "freely acknowledges that it practices polymerization processes for the manufacture of ABS SAN general purpose polystyrene at its Addyston plant." He then went on to contend that such polymerization processes did not fall within plaintiff's "own comprehensive definition of the styrene compositions which it deems to be pertinent to the patent infringement involved in this case." Plaintiff's response by affidavit, oral argument and brief is primarily that the patent which is at issue in this action speaks from its claims and that the high-impact polymers which it has reason to believe are being produced at the Addyston plant fall within such claims.

The obverse of the cover page of defendant's printed reply memorandum on defendant's motion to transfer or dismiss and rejoinder on plaintiff's Rule 34 motion contains an explanation of abbreviations used therein. Those definitions include the following:

"RMS designates 'impact polystyrene' (or 'high impact polystyrene') ; i. e., a product made by polymerizing monomeric styrene in the presence of any rubber, natural or synthetic, without the presence or addition of other polymerizable ingredients (which is synonymous with the more precise definition stated at page 2 of the Basdekis II affidavit) ; and 'RMS process' designates the polymerization process for making such a product

"ABS designates a product made by the copolymerization of styrene and acrylonitrile in the presence of any butadiene rubber; and 'ABS proc-

ess' designates the polymerization process for making that product

"SAN designates a product made by polymerizing monomeric styrene and monomeric acrylonitrile, in the absence of any rubber, natural or synthetic; and 'SAN process' designates the polymerization process for making that product"

The core of the present controversy is to be found within these definitions, or perhaps more accurately by making a comparison of them. Defendant contends that the only process that was specifically charged as an infringement prior to the filing of the complaint was RMS, which it claims to have established by affidavit is not practiced at Addyston. However, we can accept in toto the assertions of defendant's affidavits on this point (which contain conclusions of law as well as of fact) only if we ignore both plaintiff's affidavits and its argument that if defendant is practicing the teachings of its subsequent patents it is of necessity practicing an infringing process in this district. Further, the pre-suit correspondence (presently available in the exhibits) does not clearly indicate the limitation urged by defendant, and a full review of the affidavits and arguments fails to establish that defendant is not practicing the RMS process in this district.

■■■■ As is indicated by what has been hereinabove said, the essential difficulty facing us grows out of the fact that we are here dealing with a method or process patent as distinguished from a product or composition patent. In the latter instances a plaintiff may sustain his burden of establishing infringement by evidence as to the physical item or its composition, but a far more difficult problem is encountered by a complainant alleging infringement as to a patented method of production. Short of clandestine exploration, no means of deter-

---

2. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) ; see also Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

**318**

mining the methods followed at Addyston other than a visual inspection suggests itself. The usual problems encountered where parties who are direct commercial competitors are at odds regarding secret processes are present, but these are susceptible to solution by protective order.

In spite of our reluctance to further delay a disposition of both motions, it is concluded that injustice might result if a ruling were to be made as to the alternative motion without the benefit of the result of an inspection under the Rule 34 motion. Accordingly, the latter motion will be sustained and the former held in abeyance pending availability of the results of the indicated discovery procedure.

Plaintiff tendered a suggested form of order with its Rule 34 motion. The original of that order is being transmitted to counsel for the plaintiff with a copy hereof, with the request that it be endorsed and presented to counsel for the defendant. It may thereafter be returned for entry in its present form or with such modifications as may be agreeable to counsel.