**Lawrence R. SPERBERG, Plaintiff,**

v.

**The FIRESTONE TIRE & RUBBER COMPANY et al., Defendants.**

**Civ. No. C72-1067.**

United States District Court,
N. D. Ohio, E. D.

May 4, 1973.

See also, D.C., 61 F.R.D. 70.

MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

Lawrence R. Sperberg brought this action on October 5, 1972 against Firestone Tire and Rubber Company (hereafter termed "Firestone"), General Tire and Rubber Company (hereafter termed "General"), B. F. Goodrich Tire Company (hereafter termed "Goodrich"), Goodyear Tire and Rubber Company (hereafter termed "Goodyear"), and Uniroyal Tire Company (hereafter termed "Uniroyal"), each on behalf of itself and as representatives of others similarly situated. The complaint alleges that Sperberg is the owner of Patent No. 3,563,088 (hereafter termed '088), issued on February 16, 1971 and entitled "Nondestructive Method of Determining Tire Life." The complaint further alleges that the five representative defendants are infringing patent '088, and that there exists a class whose

members are infringing patent '088 without leave or license from plaintiff.

Sperberg has filed a motion pursuant to Rule 37, Fed.R.Civ.P. to order General, Goodrich and Goodyear to conduct an interparty test pursuant to Rule 34, Fed.R.Civ.P. The requested test is identical, or almost identical, as to each party. The first paragraph of the request reads as follows (General is hereafter designated, but the request applies equally to Goodrich and Goodyear):

Plaintiff, pursuant to Rule 34 F.R.C. P., requests The General Tire & Rubber Company (hereinafter General) ". . . to test, or sample . . ." tires in accordance with the tire test set forth below; to permit the entry of plaintiff and his representatives upon the land or property of General where such testing is to be performed to observe the selection of the tires and such testing; and to produce for inspection and copying all data, information and the like accumulated in the preparation for and the carrying out of such testing.

Thereafter the requested interparty test is set out in detail, covering approximately four and one-half pages, in paragraphs consecutively numbered from 1 through 8.

In paragraph numbered 1 of the test General is to, "Select a minimum of three (3) passenger tires from a large population of like tires . . ." and then defines selection criteria. Paragraph 2 states in part that General, Goodrich and Goodyear are to, "Identify each selected tire by a number code which includes the measured radial and lateral force variations." Paragraph 2 subsequently states, "Further, suitably expanded chart tracings of the force variations are to be made and keyed to the individual selected tires by the number code." Paragraph 3 states in part that General is to "Select at least one (1) tire from each radial force category as defined in paragraph (1) above for subsequent indoor wheel endurance test-ing. . . ." General is to subject the tires to a standard indoor wheel durability performance test "as performed daily by General," and then is to, "Record the miles to failure, hours to failure, speed at failure, and load at failure, individually and collectively, as required at which each tire fails and in the manner conventional to General, describe the failure and locate the failure. . . ." Paragraph 4 states in part that General is to "Perform standard regression analyses using a suitable and identifiable equation for the analyses wherein the radial force variation is identified as the governing factor and the miles to failure, hours to failure, speed at failure, or load at failure as the factors being governed." Paragraph 4 concludes "Determine the correlation coefficients and the standard deviations of variations."

The test then continues in paragraph 5 to state that the tests defined in paragraphs 1, 2, 3 and 4 are "to be performed at General's facilities and at General's expense, or at General's option by plaintiff at a suitable location at plaintiff's expense. If plaintiff is selected by General to perform the test and General also performs a similar test, the results of both tests and the analyses shall be made of record."

The test continues in paragraph 6 to state that General is to select at least two tires from "each radial force category as identified in paragraph (1) above, for outdoor performance testing . . ." Paragraph 6 then takes nearly an entire page to go into fairly specific detail concerning what General is to do in its outdoor performance testing. The testing is to be conducted under standard conditions of load, speed, inflation, tire rotation, and test route, "as would normally be tendered to an evaluation when twenty (20) tires are being compared, with the further proviso that one (1) tire of each radial force category" is to be assigned at any time to the front axle while the remaining tire is

assigned to the rear axle, with one tire being assigned to the left side of the vehicle and the other tire to the right side of the vehicle. On the other hand, if all tires "are run on a convoy" the test procedure shall call for rotation of tires between test vehicles, but the tires may or may not be rotated through front and rear axles "at the discretion of the tester." The test further requires that the tires be inspected and measured for tread loss and weight loss. In addition the tires are to be "road tested to failure or bald. The failed or bald test tires and all data developed shall be retained for the record." Furthermore, "Suitable regression analyses shall be performed wherein the radial force variation shall be considered the governing thing. . . ." In addition "Correlation coefficients and standard deviations of variation shall be determined. . . ." Paragraph 7 then repeats paragraph 5 except that it refers to paragraph 6.

Paragraph 8 then gives an option to General with reference to the categories identified in paragraph 1, stating that the tires "may be processed by a tire uniformity optimizer machine, restricting the optimizing operation according to General's current practice, such current practice shall be made of record." Paragraph 8 states that the option set forth in paragraph 8 "is in addition to the tests outlined above in paragraphs (1) through (7) and is not in replacement thereof."

Sperberg's request can be divided into two distinct parts: (1) the primary request, pursuant to the opening paragraph, and paragraphs 5 and 7, is that General, Goodrich and Goodyear are to perform various described tests; (2) alternately, pursuant to paragraphs 5 and 7, plaintiff shall perform the described tests, but only if requested to do so by the defendants.

The defendants have stated that they have no objection to a proper interparty test pursuant to Rule 34(a), with an ap-propriate protective order, but they contend that plaintiff's request goes beyond Rule 34 in that it compels them to carry out a test procedure devised by plaintiff, rather than to carry out their normal daily operations.

Rule 34(a), Fed.R.Civ.P., states:

Scope. Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession, custody or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Sperberg cites Dow Chemical Co. v. Monsanto Co., 256 F.Supp. 315 (S.D. Ohio 1966); Paul v. Sinnott, 217 F. Supp. 84 (W.D.Pa.1963); and Peelers Co. v. Kaakinen, 126 U.S.P.Q. 42 (W.D. Wash.1960). In each of these cases the Court compelled the defendant in a patent infringement case to permit the plaintiff to make a visual inspection of an alleged infringing apparatus or process on defendant's property.

There is one critical difference between the above cited cases and the request of Sperberg. In each of the cited authorities the plaintiff was permitted

to enter upon the property of the defendant and make any and all necessary observations and inspections of defendant's operations; however, the defendant was not required to conduct any special testing operations devised by plaintiff.

In Sladen v. Girltown, Inc., 425 F.2d 24 (7th Cir. 1970) the District Court ordered plaintiff to conduct flammability tests on garments, allegedly manufactured by defendant, which had caught fire and burned the plaintiff. On the basis of the tests the Court granted summary judgment for the defendant. The Appellate Court reversed, noting in part (p. 25):

> Rule 34 gives authority for the court to have objects produced on a showing of good cause in order that the moving party may have it tested. While here plaintiffs sought to test the garments first, their failure to do so would have permitted the court to order them produced for testing by the defendant but did not justify the court's ordering of a test by the plaintiff.

■ Although there are numerous factual distinctions between *Sladen* and this case, the same principle is applicable. As in *Sladen*, Sperberg is seeking to have the other party ordered to conduct tests devised by Sperberg. Rule 34 clearly does not justify such a procedure, thus Sperberg's primary request will be denied.

■ Sperberg alterantively proposes to perform the tests himself, but only if so requested by General, Goodrich and Goodyear. Sperberg is free to conduct the described tests, or any other tests, and present the results thereof at trial. The defendants possess the same right. Each party, through discovery, can demand a detailed description of the test procedures employed by the other to determine whether the test results can be discredited or distinguished. *See* Congoleum Industries, Inc. v. Armstrong

Cork Co., 319 F.Supp. 714 (E.D.Pa. 1970).

In essence, each party is free to prepare and perform tests in the manner he deems best, but he cannot compel another party to perform the same tests, and he cannot make evidentiary use of the party's refusal to perform the same tests.

The motion will be denied, without prejudice to request a proper inspection pursuant to Rule 34(a). Defendants' motion for a protective order will also be denied, it being deemed unnecessary at this time.

It is so ordered.