## Osborne v. Sears, Roebuck and Company

*Peter Molinaro,* for plaintiff.
*Anthony J. Basinski,* for defendants.

WETTICK, *A.J.,* May 16, 1985—This is a product-liability action in which plaintiff alleges that he was injured while using a radial-arm saw manufactured by Emerson Electric Company (Emerson) and sold by Sears, Roebuck and Company (Sears). Defendants allege that the injury was caused by plaintiff's misuse of the saw.

Defendants have scheduled plaintiff's deposition at the site of the accident. At the deposition they will

ask plaintiff to reenact the accident. Defendants intend to film the reenactment and will give copies of the film to plaintiff. Plaintiff has stated that he will not reenact the accident in defendants' presence unless ordered to do so by the court.

Presently before this court is defendants' motion to compel plaintiff to reenact the accident. Defendants contend that this is an appropriate discovery request because an oral description of the circumstances of the accident is far more vague than a reenactment of the incident. Defendants state that an order requiring plaintiff to demonstrate his operation of the saw would (1) narrow the issues regarding plaintiff's operation of the saw, (2) prevent undue surprise to defendants should plaintiff attempt to demonstrate his operation of the saw in court,* and (3) establish evidence in the clearest way, free from problems of verbal inadequacy and inaccuracy, regarding plaintiff's operation of the machine.

Discovery is governed by the Rules of Civil Procedure. A court has no inherent power to compel discovery. Consequently, defendants' motion will fail unless a rule of discovery authorizes this court to enter an order compelling plaintiff to reenact the accident. Conemaugh Coal and Construction Corp. v. Pittsburgh Contractors Equipment Company, 22 D.&C.3d 720 (1982).

---

\* Plaintiff's counsel advised the court that plaintiff does not intend to operate the saw in court. Also, if plaintiff intends to offer any film showing the manner in which he operated the saw, by local rule this film is required to be furnished to defendants as part of plaintiff's pretrial statement. The court would permit defendant to take a second deposition of plaintiff after the filing of plaintiff's pretrial statement if this film raised questions that were not reasonably anticipated and thus were not covered in plaintiff's original deposition.

Defendants rely on Pa.R.C.P. 4009(a), which reads in relevant part that:

"(a) A party may serve on any other party a request

"(1) to produce and permit the party making the request or someone acting on his behalf, to inspect or copy any designated documents . . . or to inspect and copy, test or sample any tangible things . . . ; or

"(2) to permit entry upon designated land or other property . . . for the purpose of inspecting and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rules 4003.1 through 4003.5 inclusive."

This rule permits defendants to enter upon the accident site (which is in plaintiff's control) for the purpose of inspecting, measuring, and operating the saw. However, no language within this rule even suggests that a court may compel an adverse party to operate a designated object for a party making a discovery request.

Rule 4009 is taken almost verbatim from Fed.R.Civ.P. 34. See Explanatory Note 1978 to Rule 4009. Defendants contend that their motion is supported by the following note of the Advisory Committee to Federal Rule 34: "If the operation of a particular machine is the basis of a claim for negligent injury, it will often be necessary to test its operating parts or to sample and test the product it is producing." However, this note only authorizes the party seeking discovery to conduct the testing.

Also, defendant's reliance on Dow Chemical Company v. Monsanto, 256 F.Supp. 315 (S.D., Ohio, 1966), is misplaced. In that case, the court granted plaintiff's motion to inspect visually the manufacturing process of defendant in a patent-infringement case in which defendant was accused of

using a manufacturing process for which plaintiff had a patent. Such discovery is permitted by the provision of Rule 34 permitting entry on property for the purpose of inspecting an "operation thereof."

Finally, there are no public-policy considerations that would favor a construction of Rule 4009 that is broader than its language. It is questionable whether a film of the reenactment would give the fact finder a clearer picture of what actually occurred. Because of the presence of the camera, the actor may experience "stage fright" and, consequently, operate the saw in a manner very different from the manner in which it was operated during the accident. Several "retakes" may be required before the actor is satisfied with the presentation. The fact finder will very likely be shown each of the filmings with each party arguing as to which filming more accurately depicts how the accident occurred.

A photographic reenactment focuses on the ability of plaintiff to portray precisely and accurately how the accident occurred. But the controlling issue at trial is not whether plaintiff can accurately describe how the accident happened or even whether the accident happened exactly in the manner described by plaintiff. Frequently, plaintiffs cannot fully and precisely recall how an accident occurred. Verbal descriptions of the accident may be vague because of memory lapses and uncertainty — not because of a witness's inability to articulate what the witness knows. Verbal descriptions permit these uncertainties to be expressed. A photographic reenactment does not allow for any uncertainty.

Also, if plaintiff states that he does not know whether he was using his left hand or his right hand, or that the blade could have been anywhere between 12 and 24 inches from his hand when he pushed a lever, or that he is uncertain whether he

was watching the switch or watching the blade, how is it possible for plaintiff to recreate the circumstances of the accident? While a photographic reenactment will give the illusion of certainty, it may only be masking the uncertainty that exists.

Although this film would have limited probative value for the reasons discussed in this opinion, it is likely that the film will receive an inordinate amount of attention at trial because of the seductive appeal of visuals on a jury in this television-oriented society. If the film depicts plaintiff using the product properly, defendants will ask the jury to disregard the film and instead consider plaintiff's possibly inconsistent verbal descriptions of the manner in which the product was used. The jury will be reminded that plaintiff would be expected to use the saw properly during the filming because he had the opportunity to rehearse its use and was devoting full attention to the manner in which he was using the saw. On the other hand, if plaintiff makes a mistake in his use of the saw, defendants will argue to the fact finder that plaintiff surely would not have used the saw properly when he was not being observed if he cannot even use it properly when he is giving full concentration to its use. Plaintiff, on the other hand, will argue that the jury should give significant weight to a film showing a proper use of the saw and seek to excuse any improper use by arguing "stage fright."

This court's ruling is consistent with Talley v. Ford, 35 D.&C.2d 772 (1964). An issue in that case was whether additional defendant had caused the automobile accident by moving into the left lane when making a right-hand turn. Original defendant contended that, because of the size of additional defendant's truck, it would not be possible for additional defendant to make a right-hand turn without

moving into the left lane. Original defendant sought to refute additional defendant's testimony that he made the turn from the right-hand lane by compelling additional defendant in discovery proceedings to make the turn in the manner which he described. The court held that the Rules of Civil Procedure did not authorize this discovery request and also concluded that if such discovery was permitted "in all likelihood, many more questions would be generated than answered, and that the issues at trial would be rendered infinitely more complex." 35 D.&C.2d at 783.

Many of the same policy considerations that led this court in Tillett v. Shento, 131 P.L.J. 297 (1982), to grant a protective order prohibiting plaintiff from taking defendant's deposition by videotape for discovery purposes support the denial of defendant's motion. These considerations include:

"Already the costs of discovery are burdensome and create difficulties for parties without substantial resources. If oral depositions may be recorded by videotape as a matter of course, litigation expenses will be substantially increased . . . .

"Also, an oral deposition subjects the less sophisticated deponents to greater stress and emotional discomfort. Constantly we are reminded of the stress that an oral deposition places on the deponent by the number of requests presented to the court to postpone or prohibit the taking of a deposition which are supported by medical reports. The recording of a deposition by videotape would substantially exacerbate this stress.

• • •

"In summary, the marginal benefits to be gained from permitting oral depositions taken for discovery purposes only to be recorded by videotape as a matter of course are far outweighed by the increased ex-

penses and trauma that will result from the unfettered use of such discovery." pp. 297-8.

For these reasons, we enter the following

### ORDER OF COURT

On this May 16, 1985, it is hereby ordered that defendants' motion to permit reenactment is denied.