Charles CULPEPPER, d/b/a Chuck's Swimmin Whole *v.*
C.D. SMITH, Wayne Matthews, John W. Cone and
Horace J. Fikes

89-301                                                    792 S.W.2d 293

Supreme Court of Arkansas
Opinion delivered June 25, 1990

*Downing & Ledbetter*, by: *Samuel E. Ledbetter*, for appellant.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Jacob Sharp, Jr.*, and *Brian Allen Brown*, for appellee C.D. Smith.

*Gibson & Deen*, by: *Charles S. Gibson*, for appellees Wayne Matthews and John W. Cone.

*Mitchell, Williams, Selig & Tucker*, by: *Richard L. Angel* and *Coleen M. Barger*, for appellee Horace J. Fikes.

JESSE B. DAGGETT, Special Justice. This court has jurisdiction of this appeal pursuant to Ark. Sup. Ct. R. 29(1)(o).

This case presents an appeal from a ruling of the Circuit Court of Desha County, Arkansas, granting summary judgments in favor of the appellees. By its final order, dated August 8, 1989, the court ruled:

> The pleadings in this cause, along with the Depositions, Answers to Interrogatories, Admissions on file, together with the Affidavits, show there is no genuine issue as to any material fact and the Motions for Summary Judgment of Smith, Matthews, Cone and Fikes, should be and the same are hereby granted.

We find the ruling to be clearly erroneous.

The procedures to be followed and the assumptions to be made in reviewing rulings granting summary judgments have now become axiomatic. Summary judgment is an extreme

remedy which should be allowed only when there is no issue of fact to be litigated. *Saunders* v. *National Old Line Ins. Co.*, 266 Ark. 247, 583 S.W.2d 58 (1979). The burden is on movant to demonstrate the absence of a genuine issue of fact. All emphasis is drawn against the moving party, and when reasonable minds might differ as to conclusions to be drawn from the facts disclosed, a summary judgment is not appropriate. *Hurst* v. *Field*, 281 Ark. 106, 661 S.W.2d 393 (1983). The purpose of a summary judgment is not to try issues, but to determine if there are issues to be tried. If doubt exists, summary judgment should not be granted. *Ashley* v. *Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969); *Southland Ins.* v. *Northwestern Nat'l Ins. Co.*, 255 Ark. 802, 502 S.W.2d 474 (1973). When considering the facts, the court should view the testimony relating thereto in the light most favorable to the party against whom the judgment is sought. *Talley* v. *MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981).

In this case, the appellant, Charles Culpepper, is a contractor doing business as "Chuck's Swimmin Whole". He resides in Dumas, Arkansas, and his business is selling and installing swimming pools. He entered into an agreement on or about June 27, 1985, with appellee, C.D. Smith, to install a swimming pool at Smith's residence in Pine Bluff, Arkansas. At that time, the projected date of commencement of work was estimated to be July 12, 1985. Contemporaneously with the execution of the contract, Smith made a down payment to Culpepper in the amount of $9,959.00.

On or about July 12, 1985, Smith contacted Culpepper advising him that he had decided to erect a roof structure over the pool, using his own carpenter, and requested Culpepper to delay commencement of his work so as to coordinate the efforts of both contractors. Culpepper agreed to do so.

Between July 12 and August 20, Smith contacted Culpepper and told him that Smith's wife no longer wanted the pool. He was undecided as to what he would do and requested that construction be put off again. Later, Smith demanded a return of his money. Culpepper then refused to refund the deposit in its entirety, stating that he wanted to consider the matter.

On August 21, 1985, one day after the original projected

completion date, Horace J. Fikes, Jr., as attorney for Smith, sent a letter to Culpepper demanding that Culpepper return Smith's down payment. In this letter, Fikes advised Culpepper that he had contacted the Jefferson County Prosecuting Attorney's office and had been told by them to write Culpepper advising him that unless he returned the down payment to Smith within five (5) days, criminal charges would be filed against him.

On September 4, 1985, Fikes wrote a letter to Wayne Matthews, the Prosecuting Attorney for Jefferson County, Arkansas, requesting that criminal charges be filed against Culpepper unless Culpepper returned the down payment before September 9, 1985. A copy of the letter was sent to Culpepper.

On September 9, Smith had a meeting with Culpepper, demanded the return of his money, and told him that he (Smith) "would have him picking peas" unless his money was returned. Smith testified that what he meant by this statement was that he would have Culpepper put in prison unless the money was returned. Smith advised Culpepper that he was revoking the contract and again demanded a refund of his down payment. On September 23, 1985, Culpepper wrote Smith, saying that he would not agree to a cancellation of the contract, but he would install the pool when advised to do so.

Matthews called the State Police Criminal Investigation Division (CID) Officer to conduct an investigation, which took place on October 2, and both Smith and Culpepper were interviewed. A report of this investigation was not reduced to writing until October 15-16, 1985. The report revealed the existence of a civil dispute over the contract between Smith and Culpepper. Matthews, in his affidavit filed in support of his motion for summary judgment, states that the investigation confirmed what Fikes had previously told him.

Sometime prior to October 10, Smith informed the deputy prosecuting attorney Jodi Raines Dennis that he could supply names of witnesses who would testify that Culpepper had taken deposits from other parties and had failed to perform as contracted. Deputy Dennis, by her affidavit filed in support of the motion for summary judgment, stated that she considered this evidence to be vital and would enable them to procure a conviction. The deputy testified that she relied heavily upon

Smith's statement as to the witnesses and intimated that she would not have filed the charges in the absence of such information.

Smith, in his deposition, admitted that he never provided such witnesses and actually never knew the names of any such witnesses.

On or about October 10, 1985, and December 9, 1985, appellee, John W. Cone, as deputy prosecuting attorney, swore out a criminal information, charging Culpepper with the crime of "theft by deception for knowingly obtaining the property of C.D. Smith by deception and with the purpose of depriving C.D. Smith of such property." A bench warrant was issued for the arrest of Charles Culpepper and he was taken into custody. The case was set for trial on March 20, 1986, on which date the State nolle prossed all charges against Culpepper.

On April 11, 1986, C.D. Smith filed the present civil action against Culpepper in the Circuit Court of Desha County, Arkansas, alleging breach of contract by Culpepper and seeking the return of his money. In response to the complaint filed against him, Culpepper filed an answer and counter-claim against Smith and filed a third party complaint against Fikes, Matthews and Cone, alleging malicious prosecution, abuse of process, and civil conspiracy against Smith, Fikes, Matthews and Cone.

On April 18, 1988, Smith filed his motion for summary judgment. On December 8, 1988, Fikes filed his motion for summary judgment. On April 21, 1989, appellees, Matthews and Cone, filed their motions for summary judgment. Culpepper responded to each motion by filing affidavits, excerpts from deposition testimony, and other documents. A hearing was conducted, and on August 9, 1989, the trial court granted all motions and entered a final judgment in favor of each defendant.

The sole issue presented to us by this appeal is the propriety of the granting of these summary judgments. A resolution of this issue involves a simple determination of whether or not there is a genuine issue of material fact remaining to be tried. The legal questions, some of which are mentioned and referred to in the briefs filed, are not before us for present consideration and will become applicable only when the case is tried on its merits and the

factual issues fully developed.

### 1. *Summary Judgment granted C.D. Smith*

There is clearly a relevant, material, and genuine issue of fact for determination in the counter-claim against C.D. Smith. Concisely stated, Smith defends against the counter-claim contending that he is entitled to a summary judgment for the reason that he is an uneducated, lay citizen without any technical knowledge of criminal law or the propriety or impropriety of invoking criminal procedures to collect a civil debt. He states that all he did was to suggest to his counsel that Culpepper be told that he was going to be imprisoned if he did not "pay off." This contention is perhaps logical from the lay point of view, but there is more to its application than "meets the eye."

The law in Arkansas, and in general, is well established that "where the defendant makes a full, fair and truthful disclosure of all the facts known to him before competent counsel and then acts bona fide upon the advice of that attorney in instituting a prosecution, the courts are in general agreement that this may be given in evidence on the issue of existence of probable cause, and if provable, will constitute a good defense," Wallace, *Malicious Prosecution—The Law in Arkansas*, 22 Ark. L. Rev. 340 (1968); *Jennings Motors* v. *Birchfield*, 182 Ark. 1047, 34 S.W.2d 455 (1931); *Rodgers* v. *General Elec. Co.*, 341 F.Supp. 971 (W.D.Ark. 1972). The general rule contemplates—if it is not actually conditioned upon—a full, complete, honest, and impartial disclosure of all facts known to the defendant. *Parker* v. *Brush*, 276 Ark. 437, 637 S.W.2d 539 (1983); *Crockett Motor Sales, Inc., supra.* Smith fell considerably short of making such a disclosure by failing to reveal two very essential facts. First, he failed to disclose that he had asked for an extension or delay in the performance of his contract with Culpepper and, in fact, subsequently breached the contract by advising Culpepper that he had decided to completely revoke it. Second, although he had advised Deputy Dennis that other people had been defrauded by Culpepper in that he had contracted with them, taken their money, and failed to perform the contract, he never furnished her any names or identified any such witnesses.

The disclosure of these facts—now accepted as being true—was a condition precedent to the availability of Smith's

defense. The deputy prosecutor testified in her deposition that she felt this evidence to be essential to a successful prosecution. "I was firmly convinced that we could do that (obtain a conviction) with that evidence." She stated that Smith told her that he had such witnesses, but he did not name them and that was one of the two reasons that she nolle prossed the case—the second being to avoid the expense of the prosecution to the State.

Smith, in his deposition, stated that he had never had such names, but that he believed they existed. At any rate, the information that Smith gave the deputy prosecutor was not stated to be a matter of belief, but given as a statement of fact. In reliance upon that information, the deputy prosecutor determined that she could get a conviction. It is fair to believe that without such information, she either would have entertained a different belief or would have at least given further consideration to the matter before having Culpepper arrested, arraigned, and charged with a criminal offense.

Fikes denied in his deposition that Smith made any disclosure of these essential facts. Fikes testified that he did not know that Culpepper was ready to start construction on Smith's job site and that he had no knowledge that Smith had ever expressed or made a statement that he was unsure about having the pool installed in the latter part of August due to his wife's uncertainty. Fikes also stated that he was unaware Culpepper was still planning to build the swimming pool, but was only waiting to hear from Smith because Smith wanted to build a structure over the swimming pool.

In short, there is clearly an existing conflict in whether or not Smith made a full, complete, and honest disclosure of all material facts known to him either to his attorney or to the prosecuting attorney's office. There is direct evidence to the effect that he did not and, for present purposes, we assume that this evidence is true and correct.

Another factual dispute arises in that Culpepper states that he orally and in writing informed Smith that he stood ready, willing, and able to complete the contract but that he was financially unable to refund the money. However, he could procure materials and furnish labor necessary to fulfill the contract. This evidence would have bearing upon Culpepper's

motive and intent, which would be essential in determining his guilt or innocence of the criminal charges made against him.

We conclude that genuine and material questions of fact are present for determination in the litigation pending against Smith, and that the trial court was in error in granting him a summary judgment.

### 2. *The summary judgment of Fikes*

Fikes is a licensed practicing attorney in Pine Bluff, Arkansas. By his testimony, he establishes that he engages in criminal practice. He contends in support of the summary judgment granted him that he merely acted as a conduit through which the information given him by Smith was transmitted to the prosecuting attorney's office. He denies that Smith furnished him with certain material information and steadfastly contends that he conveyed all information to the prosecutor. He also insists that he did not in any manner participate in or cause the filing of the information against Culpepper. To the contrary, he contends that this was the act of the prosecutor, who arrived at his decision independent of any influence or any request emanating from Fikes. Whether this is true is clearly a disputed question of fact.

The correspondence between Fikes and Culpepper is germane. On August 21, 1985, Fikes wrote a letter to Culpepper wherein Fikes advised Culpepper as follows:

> I have contacted the Prosecuting Attorney in Jefferson County and he has advised me to inform you that you have five days from the date of this letter to return the sum of $9959.00 to Mr. C.D. Smith or criminal charges will be filed against you.

On September 4, Fikes wrote the prosecuting attorney a letter, the final paragraph of which reads as follows:

> I am forwarding Mr. Culpepper a copy of this letter and I am notifying him that unless the sum of $9,959.00 has been paid in full on or before September 9, 1985, I am requesting that you file criminal charges against him.

The criminal charges were filed the 10th day of October, 1985.

It thus appears that Fikes affirmatively and knowingly participated in and requested an unlawful use of the criminal process for the purpose of pressuring Culpepper to return to Smith $9,959.00, which was known by Fikes to have been paid to Culpepper under a contract between Smith and Culpepper. Fikes, as an attorney engaging in both civil and criminal practice, knew, and is charged with knowledge, that neither he nor his client should use the criminal process as an affirmative weapon to force or coerce payment of any debt, whether disputed or undisputed. In this particular instance, Fikes was certainly aware that the obligation arose out of an alleged failure to perform a contract that could give rise to civil litigation. He denies any knowledge of Culpepper's defenses and argues that he is entitled to rely upon the facts related to him by his client. Even so, this would not entitle him to invoke the criminal process to enforce collection of a civil debt.

This question has been before the courts on innumerable occasions. In *Peterson* v. *Worthen Bank & Trust Co.*, 296 Ark. 201, 753 S.W.2d 278 (1988), Worthen Bank's attorney issued six writs of garnishment between October 1983 and July 1984 against Ms. Peterson's employer. In November 1984, a seventh writ was issued against her bank account. Ms. Peterson filed suit for abuse of process and Worthen Bank moved for summary judgment. The trial court granted the summary judgment, and the supreme court reversed, holding:

> One who uses legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed, is liable to another for the pecuniary loss caused thereby. ** The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or *the payment of money, by the use of the process as a threat or a club.* There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort. (Emphasis added.)

We entertain no doubt that Smith's intent was to use the threat of imprisonment to intimidate Culpepper and to force and

coerce him into refunding his money. Smith candidly testified that he communicated this intent to his attorney Fikes and solicited his assistance in further pursuit of this goal. Fikes, at the request and direction of his client, contacted Matthews (whom he identified as a good friend) and requested his assistance as prosecuting attorney in making the collection. Pursuant to the request, Matthews' office did institute criminal proceedings against Culpepper, but alleges that this was done as an independent act, wholly unrelated to any activity of Fikes.

This same argument was advanced in *Peterson, supra.* In *Peterson*, Worthen Bank's attorney denied certain assertions, but we stated:

> Mr. Bosshart denies the assertion, but on review of summary judgment, we assume the allegation to be true, and decide only whether a fact is material and in dispute.

Here we find the facts to be both material and in dispute.

Even after the criminal charges were filed, Deputy Prosecutor Dennis, in her deposition, states that on March 4, 1986, she made an offer to plea bargain to Brooks A. Gill, as attorney for Culpepper, and that the offer was probably made with Mr. Matthews' approval. She identified and acknowledged receipt of a letter written to her by Mr. Gill on March 17, 1986, a portion of which reads as follows:

> As I understood your offer of March 4, 1986, you have conferred with Mr. C.D. Smith and you will agree to drop the charges against Mr. Culpepper if he will pay Mr. Smith the sum of $9,959.00 without interest. Mr. Culpepper explained to Mr. Smith before these charges were filed that he could not refund his money because he did not have $9,959.00. I met with Chuck Culpepper today and he states that he is having a tough time financially and that he cannot refund Mr. Smith's money. However, Chuck states that he can purchase his supplies on credit and that he is still willing and able to install Mr. Smith's pool as originally agreed in the contract.
>
> In addition, Mr. Culpepper is not willing to plea bargain on the basis proposed in your most recent offer

whereby your office and Mr. Smith will agree to drop the charges if Mr. Culpepper will forfeit his legal right to bring a civil action for malicious prosecution and abuse of process. It is Mr. Culpepper's feeling that your decision as to whether to continue the criminal prosecution against him should be based solely on the facts and not on an unrelated matter such as whether Mr. Culpepper elects to pursue his legal rights against Mr. C.D. Smith.

Mr. Culpepper does wish to avoid any further embarrassment which will result from going through a criminal trial and is willing to negotiate a fair resolution of this case. In all honesty, we feel that the charges should be nolle prosequed in view of your disclosures of March 12, 1986, and in view of Ark. Stat. Ann. Section 41-2201(3).

Thus, it is apparent that there has been a consistent course of action, beginning with threats of instituting criminal proceedings and continuing after such institution and even up to the day of trial when the case was nolle prossed, intended to force Culpepper by use of the criminal processes to refund money to Smith. As appears from the Gill letter, the plea bargain now included another condition to be imposed upon Culpepper: his agreement to "forfeit his legal right to bring a civil action for malicious prosecution and abuse of process" against Smith, Fikes, and the prosecutors.

■ Fikes insists that Matthews made, or caused to be made, an independent investigation of the facts involved and that this relieved him (and also Smith) of all obligations to fully disclose all facts known to him. We disagree.

■ The obligation is initially imposed upon Smith, before any action is contemplated by the prosecutors, to make a full disclosure of all the facts known to him. This will enable the prosecutor, one learned in the criminal laws of the state, to evaluate the facts disclosed in determining whether or not the person accused should be charged with a criminal offense. To contend that the independent investigation supplies the missing facts is an erroneous assumption. From a practical standpoint, the investigator may fail to discover facts not revealed. In addition, all of the facts revealed might lead the investigator to

additional information bearing upon the guilt or innocence of the accused. Also, the source from which the information is obtained is of importance. Consequently, the trial court was in error in granting Fikes a summary judgment.

### 3. *The summary judgment granted Matthews and Cone*

We perceive a distinction between a situation where a debtor is advised by a layman or a lawyer that unless he pays the debt, the matter will be referred to the prosecuting attorney and the situation where, after the matter is referred to the prosecuting attorney and after charges are filed, the prosecutor engages in plea bargaining with the criminal defendant.

Obviously the creditor has a right to refer the matter to the criminal courts, and this right is in addition to the creditor's right to pursue the debtor in the civil courts. The expectation is that the prosecuting attorney will examine the facts and if, in his opinion, the debtor's actions have contravened the criminal statutes of the State, then the State will proceed to punish him for such transgressions. The criminal system is not required to blindly ignore damages which the creditor has sustained as a result of the defendant's criminal acts, and it is laudatory that the prosecutor would include in his plea bargaining a requirement of restitution. However, restitution tempers the punishment and does not absolve the crime.

Examining the evidence in the light most favorable to Culpepper as we are required to do on a motion for summary judgment, it appears that the primary, if not sole, motive of Smith, Fikes, and the prosecutor's office was to obtain a refund of Smith's money. Should their goal have been accomplished, the criminal prosecution would not have been pursued, no punishment would have been imposed upon Culpepper, and the charges would have been eradicated. When the impropriety of the criminal proceeding was recognized, an additional condition was imposed upon "exonerating" Culpepper in the form of an agreement by him to forego his right to seek redress in a civil action for the wrongful acts of Smith, Fikes, Matthews, and Cone.

The prosecutors, Cone and Matthews, plead as a defense to the civil action brought against them by Culpepper and

as a basis for granting them the summary judgment, their absolute immunity from suit for acts committed by them in the performance of the duties of their office. We hold that their immunity is absolute and is established by precedents of this court and the Supreme Court of the United States of such long standing as to now permit no exception or modification.

It has long been held that public policy demands such immunity for the prosecutors and has permitted no diminution or erosion of this defense when the acts complained of are committed within the scope of the duties of the prosecuting attorney's Office. Decisions to this effect are myriad. The decision most often cited is that of *Imbler* v. *Pachtman*, 424 U.S. 493 (1976). In that case, the supreme court granted certiorari "to consider the important and recurring issue of prosecutorial liability. . . ." The supreme court referred to "common law immunity" and spoke of the doctrine as being "well grounded in history and reason."

> We conclude that the considerations outlined above dictate the same absolute immunity under paragraph 1983 that the Prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a Prosecutor's immunity would deserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

The court then found itself "in agreement with Judge Learned Hand," who wrote of prosecutor's immunity from actions for malicious prosecution:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance, it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

The Eighth Circuit Court of Appeals has strictly adhered to these pronouncements. In *Leeuwen* v. *U.S.A., State of Arkansas, et al*, 868 F.2d 300 (8th Cir. 1989), a civil rights suit brought against federal and state judges, prosecuting attorneys, and attorneys general, Leeuwen sued for damages alleging violation of his legal rights. The district court dismissed the complaint holding that the parties sued were immune, specifically holding that "state prosecuting attorneys and attorneys general were immune from suit, because their alleged illegal acts were based upon their exercise of prosecutorial functions." The appellate court affirmed, holding that the immunity was absolute.

The decision of a prosecutor to file criminal charges is within the set of core functions which are protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, vindictively, without adequate investigation, or in excess of his jurisdiction. *Williams* v. *Hartje*, 827 F.2d 1203 (8th Cir. 1987). *See also, Ginter* v. *Stallcup*, 641 F. Supp. 939 (E.D. Ark. 1986), appeal dismissed 802 F.2d 462 (Ark. 1986); *Fogle* v. *Benton County SCAN*, 665 F. Supp. 729 (W.D. Ark. 1987); *Beaulieu* v. *Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986).

Thus it would appear that the only condition to applying the immunity to prosecutors Matthews and Cone here is the determination of whether the acts Culpepper complains of were acts (committed) within the scope of their prosecutorial duties.

We find this issue to be determined by the pleadings. In Culpepper's amended counter-claim and third party complaint, Count Two, Paragraph 7, he alleges the following:

> The defendant Wayne Matthews was acting within the course and scope of his duties and employment as Prosecuting Attorney when the acts complained of in this complaint occurred.

In paragraph 8 he alleges the following:

> The defendant John W. Cone was acting within the course and scope of his duties and employment as Deputy Prosecuting Attorney when the acts complained of in this complaint occurred.

In the joint answer of third party defendants, Wayne Matthews and John W. Cone, they both allege the following:

> It is admitted that defendant Wayne Matthews was, and is, the duly elected Prosecuting Attorney for and within Jefferson County, Arkansas, and that said defendant's involvement herein was conducted pursuant to said defendant's authority as Prosecuting Attorney.

Further,

> It is admitted that John W. Cone was, and is, a Deputy Prosecuting Attorney for and within Jefferson County, Arkansas, and that said defendant was acting pursuant to that authority with regard to the prosecution of Charles Culpepper.

Arkansas R. Civ. P. 8(d) provides that "(a) Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied. . . ."

A party is bound by his own pleadings and cannot maintain a position inconsistent therewith. *International Harvester Co.* v. *Burks Motors, Inc.*, 252 Ark. 816, 481 S.W.2d 351 (1972): *Arkansas-Louisiana Gas Co.* v. *Maxey*, 245 Ark. 15, 430 S.W.2d 866 (1968).

We therefore hold that all of the elements conditioning the application of the absolute immunity defense are present here and that the order of the court granting Matthews and Cone summary judgments must be affirmed.

We do not imply in so holding that we approve the actions of these prosecutors in this case. We have previously held that such immunity, while in fact providing a legal defense against personal liability, does not provide such immunity from disciplinary action by our Committee on Professional Conduct. In *Selby* v. *Burgess*, 289 Ark. 491, 712 S.W.2d 898 (1986), an attorney was afforded absolute immunity from suit filed against him for allegedly making scandalous and unsupported allegations in a complaint. We noted that "although the privilege is absolute . . . and will prohibit an attorney from being subject to litigation, it will not make him immune from professional discipline."

The *Selby* case cites with approval *Theiss* v. *Scherer*, 396 F.2d 650 (6th Cir. 1968) which stated that "an attorney is an officer of the court and is subject to disciplinary action by the court and his bar association."

If the action of the prosecutors is referred to the Committee on Professional Conduct and their independent investigation convinces them that these prosecutors have wrongfully and improperly utilized the processes of the law for an improper and unwarranted purpose in contravention of the rules of professional conduct, then the committee has authority to adopt such disciplinary procedures as they deem advisable.

We do not here recommend or suggest that Culpepper refer, or cause to be referred, this matter to the committee. We only intend to make clear that this opinion does not preclude such procedure.

Action of the trial court in granting summary judgments to Smith and Fikes is reversed, and the case is remanded for further proceedings not inconsistent herewith. The action of the court below in granting the summary judgment to appellees Matthews and Cone is affirmed.

GLAZE, J., not participating.