Rickey PARKER *v.* SOUTHERN FARM BUREAU
CASUALTY INSURANCE COMPANY

95-1134                                        935 S.W.2d 556

Supreme Court of Arkansas
Opinion delivered December 23, 1996
[Petition for rehearing denied January 27, 1997.]

---

*Arnold, Hamilton, & Streetman,* by: *Thomas S. Streetman,* for appellant.

*John Richard Byrd, Sr.,* for appellee.

ANDREE LAYTON ROAF, Justice. This is an insurance case. Rickey Parker sued Southern Farm Bureau Casualty Insurance Company ("Farm Bureau"), contending that an insurance policy Farm Bureau issued to him covered losses he sustained in an automobile accident. Farm Bureau denied coverage, claiming that the policy issued to Parker had expired due to nonpayment of the premium. The trial court granted summary judgment to Parker on the issue of coverage, and granted summary judgment to Farm Bureau on Parker's bad-faith claim. Parker asserts on appeal that the trial court 1) impermissibly limited the scope of discovery, 2) erroneously dismissed his bad-faith claim, and 3) arbitrarily reduced his request for attorney's fees. On cross-appeal, Farm Bureau argues that the attorney's fees should have been further reduced. We affirm on appeal and on cross-appeal.

The facts which led to this litigation may be summarized as follows. Farm Bureau issued an automobile insurance policy to Parker on June 6, 1993. The policy was for a six-month term, from September 9, 1993, through December 9, 1993, with a total premium of $745.35. Parker elected to pay the premium in quarterly installments, and made the initial payment of $377.77 at issuance of the policy.

Farm Bureau mailed Parker a "Billing Notice" on August 11, 1993, advising him that his quarterly payment was due, that his coverage would expire on September 9, 1993, if the payment was not made, and that he would receive no further renewal notice. Farm Bureau did not receive Parker's payment by September 9, 1993. Although Parker's check register indicated that he wrote a check to Farm Bureau for the premium on September 2, 1993, this check never cleared his bank.

Parker's daughter was involved in a two-vehicle accident while driving one of Parker's insured vehicles. She was at fault in the accident. Parker's vehicle was damaged in the amount of $1,456.21, and the other vehicle sustained damages in the amount of $439.70.

Parker reported the accident to his Farm Bureau agent on September 17, 1993, and also filed a claim for his losses.

On September 22, 1993, Farm Bureau mailed Parker a "Cancellation Reminder Notice" informing him that his policy was canceled September 9, 1993, because the quarterly premium had not been paid. The notice invited Parker to reinstate his coverage. Parker took the notice to his Farm Bureau agent on September 27, 1993, and also showed the agent his check register with the notation of a check for the September 2 premium payment. Parker paid the premium on September 27, and his Farm Bureau agent attempted to reinstate Parker's coverage effective September 9, 1993. However, Farm Bureau's underwriting department refused to allow the retroactive reinstatement and instead reinstated the policy effective October 4, 1993.

Parker's efforts to settle the claim with Farm Bureau were unsuccessful, and he filed suit against the company on July 13, 1994. Parker sued Farm Bureau for failure to comply with the terms of his policy and with Ark. Code Ann. § 23-89-304 (Repl. 1992), which requires ten days' notice of cancellation for nonpayment of insurance premiums. Parker also asserted a claim for the first party tort of bad faith for the failure to pay his claim. He sought recovery for the damages to his vehicle, statutory penalty, attorney's fees, punitive damages, and a declaratory judgment that Farm Bureau was required to pay the damages sustained by the other driver.

The trial court granted Parker summary judgment on the issue of insurance coverage, finding that Farm Bureau failed to comply with the ten-day notice requirement. The trial court granted Farm Bureau summary judgment on the bad-faith claim. Parker was awarded $1,403.73, which included the twelve percent statutory penalty, and attorney's fees in the amount of $10,676. Farm Bureau was also adjudged liable for the other driver's damages of $439.59.

Parker appeals from the dismissal of his bad faith claim and from the trial court's award of less than the requested attorney's fees. Parker also asserts that the trial court erroneously limited the scope of discovery, which he needed to establish his claim of bad faith. Farm Bureau cross-appeals the trial court's award of attorney's fees.

Although Farm Bureau does not appeal the award of summary judgment on the issue of coverage, it is necessary to review the basis

of the trial court's ruling on this question in order to address Parker's arguments regarding his bad-faith claim. Parker's policy was for a six-month period, and the declaration sheet issued stated that the policy period was June 9, 1993, through December 9, 1993. The trial court based its award of summary judgment upon Farm Bureau's failure to comply with the notice provision of Parker's policy and with the ten-day notice required by Arkansas statute. This statutory notice requirement is found in the subchapter dealing with cancellation and nonrenewal of automobile liability, physical damage and collision policies, and provides as follows:

> No notice of cancellation to any named insured shall be effective unless mailed or delivered at least twenty (20) days prior to the effective date of cancellation, provided that, *where cancellation is for nonpayment of premium, at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given.*

Ark. Code Ann. § 23-89-304(a)(2) (emphasis added).

Parker's policy contained a provision entitled "Cancellation," which essentially tracked the statutory notice provision, and provided as follows:

> *If we cancel your policy, for non payment of premium, we will notify you in writing at least ten (10) days before the date of cancellation.* If we cancel your policy for any other reason we will notify you in writing at least twenty (20) days before the date of cancellation. . . . The policy period will end of the date and time stated in the notice.

(Emphasis added.) The policy contained a further provision concerning renewal premium and policy periods:

> Your Declaration or renewal certificate will show the policy period. Unless cancelled, this policy may be renewed at our option if the required premium is paid by you and accepted by us. Failure to pay on time will end coverage. If your policy does expire and you send a later payment of the required premium, we may reinstate at our option, as of the date and time the payment is received. A new policy period is then established.

The only notice Farm Bureau sent to Parker prior to cancellation of his policy was the following "Billing Notice," sent twenty-

seven days before his quarterly installment payment was due:

> It is time to make your quarterly premium payment on your auto policy. Please accept this notice that your coverage is due to expire 12:01 am, 09-09-93. To keep your coverage in force please mail us your payment before that date. In order to reduce expenses this will be the only renewal notice you will receive. . . .

Farm Bureau insisted to the trial court and continued to assert on appeal that Parker only purchased insurance for three months, and that the statutory notice of cancellation thus did not apply to a policy which expired by its own terms. Farm Bureau also maintained, alternatively, that the billing notice sent to Parker satisfied the statutory notice requirement. The trial court found that Farm Bureau's reliance on the case of *Farmers Ins. Co. v. Hall,* 263 Ark. 734, 567 S.W.2d 296 (1978), was misplaced because in *Hall,* this court held that the ten-day cancellation notice was not required where a policy expired on its own terms because the insured failed to pay a renewal premium before the policy expiration date. The holding in *Hall* was thus not applicable to cancellation for failure to pay an installment payment. Farm Bureau did not appeal the grant of summary judgment on this issue and finally admitted during oral argument before this court that it had failed to comply with the statutory notice requirement. With this background in mind, we turn to the arguments which Parker raises regarding his claim of bad faith.

### 1. Restriction of discovery.

Parker first argues that the trial court erroneously restricted his efforts to discover certain records maintained by Farm Bureau which were relevant to his claim of bad faith. This argument concerns two discovery requests which must be addressed separately.

### A. Farm Bureau's cancellation notices to other insureds.

During the course of discovery, Parker sought to obtain the twenty most recent notices mailed by Farm Bureau to its insureds giving notice of its intent to cancel automobile insurance for non-payment of premiums. On appeal, Parker argues that the notices might contain evidence of Farm Bureau's bad faith in denying his claim if other insureds similarly situated received the ten-day cancellation notice. Parker had earlier discovered that Farm Bureau

maintained a dual system of billing. Farm Bureau admitted to the dual system during discovery, provided Parker with copies of the two types of notices sent to its insureds, and its employees explained the system in great detail during depositions. According to Farm Bureau, the type of notice sent to its policyholders depended on whether or not "clean billing" was involved. Farm Bureau defined clean billing as quarterly, semi-annual, or annual billing of renewal and installment premiums, where no change had been made in the policy. The only notice sent in that instance was the "Billing Notice" like the one sent to Parker, approximately thirty days prior to the due date of the renewal or installment premiums. A notice of cancellation was not sent until twelve days after the termination of the coverage.

Farm Bureau used a different procedure when it was necessary to send an additional bill during the term of the policy for reasons such as the addition of a vehicle, driver, or coverage, or the insured's failure to pay Farm Bureau dues. These policyholders received a bill for the additional premium approximately twenty-five days before the due date. If the additional premium or Farm Bureau dues remained unpaid twelve days after the due date, they were mailed a notice advising them that the policy would be cancelled in ten days if the additional payment was not received. Thus, the second category of policyholders received the statutory ten-day notice of cancellation, and in effect, twenty-two days after the due date to pay the premium and avoid cancellation of the policy, while Parker and policy holders similarly situated received no notice prior to cancellation.

Farm Bureau resisted discovery of the notices to its insureds as not relevant, and violative of the privacy rights of its policy holders. The trial court found that Parker had discovered how and why Farm Bureau billed some insureds differently from others, and thus the additional relevancy of the notices had not been shown. Parker argues that the trial court abused its discretion in denying him the right to inspect and copy these notices.

This court has long held that the trial court has wide discretion in matters pertaining to discovery and that a trial court's decision will not be reversed absent an abuse of discretion. *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992) (citing *Marrow v. State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978)). Although we recognize the magnitude of the trial court's discretion in discovery

matters, we have found an abuse of discretion where there has been an undue limitation of substantial rights of the appellant under the prevailing circumstances. *Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W.2d 446 (1971). A motion for production of documents must be considered in the light of the particular circumstances which give rise to it, and the need of the movant for the information requested. *Marrow, supra.*

■ Parker is correct in his assertion that in cases where the appellant is relegated to having to prove his claim by documents, papers, and letters kept by the appellee, the scope of discovery should be broader. *Marrow* v. *State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978). We consider this factor in deciding whether there has been an abuse of discretion in denying a discovery request. *Id.* The goal of discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Id.*

In *Marrow*, this court held that the appellant's discovery had been unduly limited, finding it significant that the appellant was in the position of having to prove his fraud case by the testimony of officers and agents of the insurance company, and by documents, papers, and letters, written and kept by the insurance company. That the information sought was not otherwise available to the party making the request, and that evidence pertaining to the issue, if there was any, would likely be in the files of the insurance company were said to be "very pertinent circumstances." *Id.*

Clearly, the general principles articulated in *Marrow* are applicable to a claim of bad faith. However, the materials held discoverable in *Marrow* were directly related to the insurance claim at issue, and we stated in *Marrow* that this court has never sanctioned "an outright and unadulterated fishing expedition."

Moreover, the fact remains that during the course of discovery Farm Bureau provided Parker with substantial information and material regarding the billing and notice procedures. Virtually all of the discovered evidence and deposition testimony corroborated Farm Bureau's position that it did, in fact, have a dual billing-notice system with regard to what it defined as "clean billing," as opposed to other billing situations involving a change in the policies. The trial court found this evidence significant in issuing the protective order for the notices.

Furthermore, Parker's first request for the ten most recent cancellation notices was filed October 26, 1994, and his second request for the twenty most recent cancellation notices was filed January 20, 1995. Parker's action for bad faith asserting failure to comply with the statutory notice provision was filed on July 13, 1994. However, he did not request cancellation notices issued by Farm Bureau to other policy holders prior to July 13, 1994. His cause of action for bad faith must exist and be complete at the time his lawsuit was filed, *Elston* v. *Wilborn*, 208 Ark. 377, 186 S.W.2d 662 (1945), and Parker does not show how notices sent after his lawsuit was filed would be relevant to his bad-faith claim.

■ As we stated in *Marrow, supra*, a motion for production of documents must be considered in the light of the particular circumstances which give rise to it and the need of the movant for the information requested. Given the particular circumstances and our standard of review, we cannot say that the trial court abused its discretion in granting the protective order.

*B. Parker's claim file.*

Parker also sought to discover all Farm Bureau inter-office memoranda relating to his claim, to which Farm Bureau objected. Farm Bureau submitted Parker's thirty-eight-page claim file to the trial court for an *in camera* inspection. The trial court determined that four pages of the file would not be discoverable, finding that they were prepared in anticipation of litigation under Ark. R. Civ. P. 26(b)(3).

The four pages of the claims file that the trial court found were prepared in anticipation of litigation were all inter-office memoranda between two Farm Bureau employees, sent from November 22, 1993 to May 23, 1994.

On appeal, Parker argues that the four pages were not matters covered by the attorney-client privilege. However, Farm Bureau does not assert that the materials are protected by the attorney-client privilege, nor did the trial court base its ruling on attorney-client privilege. Instead, the trial court found that Parker had threatened suit in November of 1993, and "after that point in time, certain documents may have been prepared in anticipation of litigation or may reflect representatives of Farm Bureau's legal theories concerning any defense to the threatened suit."

■ Work product is not the same as a privilege which protects the sanctity of confidential communications. In discussing the attorney-client privilege and the work-product rule, this court has observed that "[t]he two rules and the principles upon which they are based, while susceptible to confusion, are separate and distinct." *Arkansas Nat'l Bank* v. *Cleburne County Bank*, 258 Ark. 329, 525 S.W.2d 82 (1975).

The discoverability of an insured's claim file under the work-product doctrine has been considered on many occasions by courts in other jurisdictions. However, Parker's argument does not address the basis for the trial court's ruling, and he consequently provides no discussion of the rulings in these cases. We could dispose of this point in his appeal on the basis that he has offered no authority or convincing argument on this issue, however there is a further reason for upholding the trial court's ruling in this instance. We have stated that a trial court has broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by the appellate court absent an abuse of discretion that is prejudicial to the appealing party. *Wade* v. *Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995); *Morris* v. *Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991).

■ Here, the trial court found that Parker was not entitled to discover four pages out of a thirty-eight-page claim file. The four excluded pages provide in substance as follows:

> — Page 16 — memo dated November 22, 1993. I had phone call with Streetman [Parker's attorney] on 11-18-93, forwarding dictated report. Since underwriting has determined insurance not in force, I am closing file.

> — Page 15 — memo dated November 23, 1993. Streetman does not have proof that Parker wrote check, however, he feels that he has a strong circumstantial case. Streetman states that Parker's check register shows that he wrote a premium check to Farm Bureau one week before expiration of the policy. Streetman asks us to reconsider, or he will litigate.

> — Page 13 — memo dated May 11, 1994. I am enclosing under cover memo dated May 11, 1994, some evidence that Streetman feels is enough to win the case. I advised him that our position has not changed, Streetman indicated willingness to compromise.

— Page 12 — memo dated May 23, 1994. I contacted Streetman and advised him our position is unchanged unless they can produce the cancelled check.

Parker does not explain how these documents were pertinent to his claim of bad faith, nor does he argue that he was prejudiced by their exclusion. He simply asserts that the claim file is discoverable because it contains the evidence that he needs to show bad faith and that he should be allowed full, complete and unfettered access to his entire claim file. We cannot discern any information in these memos that Parker did not otherwise possess, and he has not shown that he was prejudiced by the trial court's exclusion of these documents.

### 2. Bad-faith claim.

This court has stated that an insurance company may incur liability for the first-party tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *R.J. Jones Excavating Contr.* v. *Firemen's Ins.*, 324 Ark. 282, 920 S.W.2d 483 (1996); *Employers Equitable Life Ins. Co.* v. *Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984). Stated another way, we have often explained that the tort of bad faith requires affirmative misconduct, without a good-faith defense; the affirmative conduct must be dishonest, malicious, or oppressive in an attempt to avoid the insurer's liability under an insurance policy. *See, e.g., Reynolds* v. *Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).

In the present case, Parker argues that his bad-faith claim is based on Farm Bureau's intentional failure to comply with the statutory and policy provision requiring the ten-day notice of intent to cancel for nonpayment of premiums, and Farm Bureau's intentional failure to give him a twelve-day grace period that it gave to some of its other insureds.

Parker contends that Farm Bureau engaged in oppressive conduct by persisting in its assertion that Parker had only a three-month policy, and that this policy was not cancelled, but had expired. He contends that Farm Bureau knew these assertions and its reliance on *Hall, supra,* were unfounded. Parker further suggests that Farm Bureau's failure to appeal the summary judgment granted to him on the issue of coverage is evidence that Farm Bureau's conduct was willful and intentional, and not based in good faith.

Parker points to numerous instances of Farm Bureau's allegedly oppressive conduct throughout the course of the litigation by reference to positions taken in its pleadings, briefs, affidavits, and the depositions of its employees. The problem with Parker's argument is that all of the evidence he points to occurred after his complaint was filed and during the course of the litigation. He points to no specific affirmative misconduct, other than the denial of his claim, and the refusal to retroactively reinstate his policy prior to the filing of his lawsuit on July 13, 1994. Nor does he explain how Farm Bureau's conduct was "dishonest, malicious, or oppressive" prior to the filing of his lawsuit. Moreover, there is nothing in Parker's abstract to indicate that he even asserted a claim for violation of the notice provisions prior to the filing of his complaint. In fact, the memoranda which the trial court excluded from discovery reflect that Parker's position in settlement discussions with Farm Bureau as late as May, 1994, was that he had paid the premium before the cancellation of the policy.

The tort of bad faith cannot arise merely from the denial of a claim, without some affirmative misconduct. *See Arkansas Mun. League Mun. Health Ben. Fund*, 285 Ark. 419, 688 S.W.2d 720 (1985). It is also well-established that a cause of action must exist and be complete at the time the action is commenced. *Elston v. Wilborn*, 208 Ark. 377, 186 S.W.2d 662 (1945). The subsequent occurrence of a material fact cannot aid in maintaining it. *Id.* Therefore, none of the conduct by Farm Bureau after the filing of the complaint, including legal positions asserted, can provide a basis for Parker's bad-faith claim. Farm Bureau's dogged insistence on misapplying *Hall* could provide tangible evidence of bad faith had it occurred before Parker's action was filed. However, it is not apparent from the abstract that the lack of notice was even raised by Parker prior to the filing of the lawsuit. Consequently, we cannot say that Farm Bureau's action, albeit mistaken, in denying the claim for non-payment of premium constitutes dishonest, malicious, or oppressive conduct rising to the level of bad faith.

### 3. Attorney's fee award.

Parker's final point on appeal is that the trial court erred in arbitrarily reducing his requested attorney fees by one-third, from $16,096 to $10,676, and in failing to award reimbursement for reasonable trial expense.

On cross-appeal, Farm Bureau contends that the trial court abused its discretion by awarding the appellant $10,676 in attorney's fees on a claim valued at only $1,646. Parker's attorney submitted a bill to the trial court for attorney's fees in the amount of $16,096. Pursuant to Ark. Code Ann. § 23-79-208 (Repl. 1992), which provides for attorney's fees in loss claims, the trial court awarded $10,676 in fees, reducing the requested amount by one-third. The trial court found it significant that the matter was vigorously defended on both the bad-faith and notice issue, noting that the issues were "intricately connected," and difficult to separate from one another. The trial court also made the following findings:

> The court is convinced that some of the effort of Mr. Streetman in this case was directed toward the bad faith claim, which is a tort action rather than a contract action. The court's opinion, based on what it has seen in handling the case to date, is that the claim for attorney's fees should be reduced by one-third. . . .
>
> * * *
>
> The court is not unmindful that this figure is approximately five times the amount recovered, which is one of the factors to be consider in setting attorney's fees. However, it is not the only factor, and when the time spent by Mr. Streetman . . . and the considerable vigour [sic] of the defense on the notice claim is measured in to the equation, the court finds the fee set reasonable.

On appeal, Parker argues that the fee should not have been reduced, and on cross-appeal, Farm Bureau asserts that the fee should have been further reduced by another third. In this regard, we have said that due to the trial court's superior acquaintance with the record and the quality of the service rendered, we will usually defer to the trial court's superior perspective in awarding attorney's fees and will reverse only when there has been an abuse of discretion. *Gill v. Transcriptions, Inc.*, 319 Ark. 485, 892 S.W.2d 258 (1995).

In *Old Republic Ins. Co. v. Alexander*, 245 Ark. 1029, 436 S.W.2d 829 (1969), this court upheld a $6,000 fee on a $51,000 recovery under Ark. Stat. Ann. § 66-3239. We stated that the amount of the fee should not be such that attorneys would avoid the type of litigation, or fail to sufficiently prepare, that the fee

should be commensurate with the time and amount of work involved, and the ability present and necessary to meet the issues that arise in the case. Furthermore, the amount recovered in the action is a relevant consideration.

In *Northwestern Nat'l Life Ins. Co.* v. *Heslip*, 309 Ark. 319, 832 S.W.2d 463 (1992), this court affirmed a $19,500 fee on a $36,000 award pursuant to Ark. Code Ann. § 23-79-208. The court outlined the following factors as relevant in the determination of the fee: 1) experience and ability of the attorney; 2) time and labor required to perform the service properly; 3) amount involved and the result obtained in the case; 4) novelty and difficulty of the issues involved; 5) the fee customarily charged for similar services in the locality; 6) whether the fee is fixed or contingent; 7) the time limitations imposed upon the client in the circumstances; and 8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. *Id*.

In the present case, Parker submitted a detailed bill for 117.60 total hours. While it is virtually impossible to separate those services related to the coverage claim and those related to the bad faith claim, the large amount of the fee in relation to Parker's recovery is obvious, and we have said that the amount recovered is a proper consideration.

Farm Bureau expresses policy concerns that other attorneys will bring frivolous bad-faith claims in coverage cases in order to recover a larger fee. Parker replies that because this was a relatively small claim, the conduct of Farm Bureau was especially egregious, and that the larger fee should be upheld in order to encourage competent attorneys to take on such small cases.

The trial court, in its order, considered these and all of the relevant factors presented in this case. We cannot say that there was an abuse of discretion in the award of the fee.

Affirmed on appeal and affirmed on cross-appeal.

Special Justice ELTON A. RIEVES, III, joins in this opinion.

JESSON, C.J., and DUDLEY, J., not participating.

GLAZE, J., concurring.

BROWN, J., and Special Justice MICHAEL E. STUBBLEFIELD,

dissenting.

TOM GLAZE, Justice, concurring. I agree that the trial court should be affirmed, but for a different reason than that set out in the majority opinion. The main substantive issue on appeal is whether the trial judge erred in dismissing appellant Rickey Parker's bad-faith claim.

In making his decision, the judge had before him appellee Southern Farm Bureau Casualty Insurance Company's theory that, under the holding in *Farmers Ins. Company v. Hall*, 263 Ark. 734, 567 S.W.2d 296 (1978), Southern Farm was not required to give an insured the ten-day cancellation notice provided in Ark. Code Ann. § 23-89-304 (Repl. 1992). In the *Hall* decision, Hall elected to renew his six-month liability policy which was to commence on January 3, 1975. However, he failed to pay his premium until January 25, 1975, shortly before his vehicle was damaged in a collision. Hall had previously received an "Offer to Renew" notice on December 11, 1974, from Farmers Insurance, informing him that the renewal date was January 3, 1975. Although the trial court held in Hall's favor, finding his policy was still in force, this court reversed, holding the policy by its own terms had lapsed. The *Hall* court stated the following:

> Appellant [Farmers Insurance] was not required to give notice of cancellation of the policy under Ark. Stat. Ann. §§ 66-4007 — 66-4013 (Supp. 1977) [now Ark. Code Ann. §§ 23-89-301 — 308 (Repl. 1992)]. There was no cancellation of the policy. *If the offer to renew had not been made, the policy would have expired by its own terms. Notice of cancellation of a policy may be required upon nonpayment of the premium under § 66-4008, but this requirement applies only to a cancellation by unilateral action of the insurer before the end of the policy term and not an automatic termination by expiration of the policy period.* (Emphasis added.)[1]

In the present case, Southern Farm had established a billing system like Farmers Insurance in the *Hall* case, where a "renewal notice" was sent to the insured prior to the policy's renewal or

---

[1] Sections 66-4008 and 4009, among other things, provided for ten-days notice of cancellation for nonpayment of premium.

expiration date. Southern Farm's contention was that Parker had paid only for three-months' coverage, and Southern Farm, in good faith, had notified Parker prior to the three-month period that his policy would lapse, unless Parker had paid his six-month premium in full. Parker clearly failed to do so. Even so, the trial court still determined Parker's policy was in force. The trial court held that Southern Farm's interpretation of the *Hall* decision was wrong and that, while the company contended Parker's policy was like a renewal policy such as the one in *Hall*, Parker's policy, instead, was for a six-month term and only three months had expired. The trial court concluded that, unlike the *Hall* decision, Parker was not renewing his policy, and Southern Farm was required to give Parker the ten-day cancellation notice in § 23-89-304(a)(1) when he failed to pay the three-month premium balance owed on his policy.

Even though the trial court rejected Southern Farm's legal theory concerning this ten-day notice issue, it decided the company's argument had been made in good faith. In my view, to overturn the trial court's decision would tend to chill legitimate legal arguments. While Parker is convinced Southern Farm's argument was spurious, the trial court was not so sure (and neither am I), especially since Southern Farm's theory was based upon legal precedent similar to the situation in this case. Also, while Parker seems convinced that Southern Farm's failure to accept responsibility for Parker's claim was personally and oppressively directed at him, Southern Farm had mailed Parker a timely "*renewal notice*" like the one utilized in the *Hall* case. That notice very clearly informed Parker that the notice was the only one he would receive if he intended to keep his coverage in force. Southern Farm's "renewal notice" was based upon *Hall*, and even though it was ultimately held by the trial court to be invalid, that holding does not mean Southern Farm was in bad faith in adopting such a notice procedure. At least, I cannot say the trial court erred in reaching such a conclusion.

In other issues, Parker asserts the trial court erred in denying him certain discovery which might have led him to evidence bearing on the "bad faith" issue. For example, Parker claims that, if he could have obtained Southern Farm's twenty most recent notices to its insureds who were to be cancelled for nonpayment of premiums, he might have been able to show if he was being treated differently

from other insureds who were similarly situated.

I agree with Parker that our rules establishing discovery procedures should be given a broad and liberal interpretation. However, in reading Parker's brief and listening to oral argument, I fail to understand the relevance of the information sought by Parker or how it could help his case. Undoubtedly, Southern Farm had established a dual-notice system which, when applied to Parker and others in his circumstances, the trial court held was invalid. That being said, I think the trial court was quite right in denying his discovery request.

ROBERT L. BROWN, Justice, dissenting. It is difficult to conceive of what could be more significant in bad-faith litigation than for an insured to be able to determine how other insureds in the same situation were treated by the carrier. The majority has decided that this information is not pertinent and that Parker in this case must give absolute credence to the carrier's representation that uniform procedures relating to cancellations were followed in this case. I disagree. The essence of litigation is proof — not representations by an adversary of what *should* have been done. Parker ought not to be bound by what Farm Bureau states its general procedures were. He is entitled to go behind Farm Bureau's statements to verify what *in reality* was done with regard to cancellations.

The majority characterizes this quest for verification as a "fishing expedition." I cannot conclude that an attempt to confirm averred practices of an insurance carrier is anything of the kind. Farm Bureau holds the information. It has made statements under oath that it should be required to substantiate, and our rules and case law certainly support this conclusion.

Arkansas Rule of Civil Procedure 26(b)(1) permits discovery of all relevant information, which is defined as information which is non-privileged and which "appears reasonably calculated to lead to the discovery of admissible evidence." The seminal case in this area is *Marrow* v. *State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978). In *Marrow*, the complaint was brought by the victim of a car accident against the insurance carrier of the tortfeasor for fraud in misrepresenting the amount of liability coverage. The victim moved for documents held by the carrier pertaining to the claim. The request was denied by the trial court, and summary judgment was entered in favor of the carrier. We reversed the summary judgment

on the basis that discovery was impermissibly curtailed. First, we noted that the trial court has broad discretion in discovery matters and will only be reversed for abuse of that discretion. But we went further and stated that we would find abuse of that discretion when the substantial rights of the moving party are limited. We said:

> In this case, we find an abuse of discretion in the denial of appellant's last motion for production of documents. In so doing, we consider the fact that appellant, if he has any claim against State Farm, is placed in the position of having to prove it by the testimony of officers and agents of State Farm and by documents, papers and letters, written by them and kept by State Farm. In such a case, the scope of discovery permitted should be broader than otherwise and appellant here should be permitted to inspect any writing in the files of the insurance company which might lead to admissible evidence. See *Connecticut Mutual Life Ins. Co.* v. *Shields*, 17 FRD 273 (S.D., N.Y., 1955); *Dow Chemical Co.* v. *Monsanto Co.*, 256 F.S. 315 (S.D., Ohio, 1966).

*Marrow*, 264 Ark. at 236-37, 570 S.W.2d at 613. *See also Rickett* v. *Hayes*, 251 Ark. 395, 473 S.W.2d 446 (1971); *Heinrich* v. *Harp's Food Stores, Inc.*, 52 Ark. App. 165, 915 S.W.2d 734 (1996); *Ashmore* v. *Ford*, 267 Ark. 854, 591 S.W.2d 666 (Ark. App. 1980).

The majority in the instant case hinges its truncation of discovery on two factors: (1) that the request is an outright and unadulterated fishing expedition; and (2) that Farm Bureau has a dual-billing system and, thus, was treating its insureds differently for cancellation-notice purposes. First, I disagree that this is an unadulterated fishing expedition for reasons already stated. Secondly, the fact that Farm Bureau gave different billing notices for Category X insureds involving renewal and installment premiums due versus Category Y insureds where additional premiums were assessed for changes in coverage, and only gave ten-day cancellation notices for Category Y insureds, does not resolve Parker's dilemma. He wants to know whether any Category X insureds received cancellation notices for failure to pay when he did not.

Parker asked for the 20 most recent cancellation notices mailed by Farm Bureau to its insureds. When Farm Bureau moved for a protective order, Parker responded that he was entitled to this information "to see if [Farm Bureau] dealt with [the 20] differently

than [himself]." At the first hearing on the discovery request, counsel for Parker argued to the court:

> We think under the liberal discovery rules that we are entitled to that information. Were that not true, you could never really and completely prove the tort of bad faith for failure to pay insurance coverage because you need to see what the insurance company itself has done and said with regard to your file, your own claim, *as well as how they have treated other or similarly situated claimants and whether they dealt with this plaintiff differently than they have dealt with other claimants, and was there some reason for that.* This relates to both the last ten (10) notices of cancellation that they gave to their insureds for non-payment of premiums and to information from our own claim file.[1] (Emphasis added.)

The trial court denied the discovery request due to irrelevance and granted the protective order.

What transpired next was the trial court's grant of summary judgment on the bad-faith claim for the stated reason that "the court finds an insufficient factual basis to support it." My response to that statement in the court's order is that Parker was foreclosed, at least in part, from developing his factual basis.

Again, this was not a fishing expedition. Nor was it an effort to garner information merely for impeachment purposes. It was an attempt by Parker to verify essential representations by Farm Bureau that went to the heart of his bad-faith claim. If Farm Bureau in fact was treating him differently, this would comprise a vital element of his case and would be probative of dishonesty on the part of the carrier. I would not shut the door on this essential inquiry but would require Farm Bureau to support its representation made in sworn depositions that all insureds like Parker were treated the same. Finally, I am not troubled by privacy concerns for the 20 insureds. Redaction of names and other information that might identify those insureds could be easily accomplished, and the trial court could review the redacted notices *in camera* to assure privacy rights are protected.

Also, the majority focuses on the post-litigation point for the

---

[1] Parker subsequently increased his request to the last 20 notices of cancellation.

first time in its opinion. It was not raised at trial or by the parties in this appeal. The time frame for the notices to be discovered could have been fleshed out at the trial court level had not the door to discovery been shut and bolted.

I respectfully dissent.

MICHAEL E. STUBBLEFIELD, Special Justice, dissenting. I would affirm the trial court's ruling on the issues of insurance coverage, the statutory twelve percent penalty, and attorney's fees. But because I think the discovery in this case was unduly restricted by the trial court's protective order, I would reverse and remand on the bad faith and discovery issues. Summary judgment is an extreme remedy which should only be granted when there is no factual dispute. When considering a motion for summary judgment, the court views the facts in the light most favorable to the party against whom judgment is sought, and when reasonable minds might differ as to conclusions to be drawn from the facts disclosed, a summary judgment is not proper. *Culpepper* v. *Smith*, 302 Ark. 558, 792 S.W.2d 293 (1990). I think the facts in this case show that reasonable minds might differ as to conclusions to be drawn from the insurance company's handling and denial of the plaintiff's claim.

Unlike the majority, I am convinced that denial of a claim may be evidence of bad faith where, as here, the insurance company acknowledges that statutory law and its own policy require a ten-day notice of cancellation. As noted in Justice Glaze's concurring opinion, the defendant insurance company in the instant case relied on the ruling in *Farmers Ins. Co.* v. *Hall*, 263 Ark. 734, 567 S.W.2d 296 (1978) for the proposition that it was not required to give the ten-day notice. But that stance was based on a plain misapplication of *Hall* to the facts of the instant case, and was inconsistent with the company's admission in discovery that their policy language and the applicable statute, Ark. Code Ann. § 23-89-304(a)(2), required a ten-day notice of cancellation to the insured. Farm Bureau's agents also admitted that no such notice was sent to the insured in this case. So the company's alleged good-faith denial of coverage was based on a disingenuous argument which, I contend, is tangible evidence of bad faith.

And I believe that the trial court abused its discretion in denying the plaintiff the requested discovery of Farm Bureau's cancellation notices sent to twenty other policyholders. The insured

argued in the trial court that he should be allowed to make discovery of twenty cancellation notices sent to other insureds of the company who were similarly situated, but he was denied access by the trial court's ruling that the requested discovery was irrelevant and, in any case, would violate the privacy of other policyholders. The insured's effort to produce evidence of bad faith was thereby effectively foreclosed. The majority opinion condones that ruling as fair application of discovery rules and caselaw, but I agree with Justice Brown's cogent analysis of the discovery issue in his dissent. Especially telling is his point that "[t]he essence of litigation is proof — not representations by an adversary of what should have been done." If we accept the proposition that an insurance company's disparate treatment of a policyholder in denying coverage may be shown to be oppressive or dishonest conduct rising to the level of bad faith, then a policyholder who has reason to suspect that he may have been treated disparately from other policyholders should be allowed reasonable access to defense documents which may show that his suspicions are accurate (or inaccurate). Even if characterized as a "fishing expedition" (with which characterization I disagree), discovery of twenty notices would not have been burdensome or oppressive for the insurance company. And if the insurance company's defense was genuine and there was, in fact, no disparate or unfair treatment of the plaintiff, then the company's good faith would have been established without doubt. As the trial court left it, the plaintiff was summarily overruled and outpowered.

Farm Bureau issued a six-month policy to the insured which was, according to the declaration page of the policy, to be effective through December 9, 1993. But the company took the position (and staunchly maintained it throughout this action and through oral argument on appeal), that the policy had lapsed for non-payment of premium after three months. Insurance contracts are adhesion contracts in the truest sense of the word. 2 COUCH ON INSURANCE 3D § 22:11 (1995). The insurance company drafts the language and is in the best position to understand its meaning. Therefore, this court has long followed the majority rule that the intent to exclude coverage in insurance contracts should be expressed in clear and unambiguous language, and that such provisions are strictly construed against the insurance company and liberally construed in favor of the insured. *Nationwide Mut. Ins. Co.* v. *Worthey*, 314 Ark. 185, 861 S.W.2d 307 (1993). Insurers and their legal counsel know this well. The trial court in this case found in

the insured's favor on the coverage question on grounds that Farm Bureau failed to comply with the ten-day notice requirement. The company has not appealed that ruling. Yet the company insisted throughout this litigation that it was genuinely defending its denial of coverage on the belief that it had fully complied with the ten-day notice required by policy language and Ark. Code Ann. § 23-89-304(a)(2). That argument is clearly untenable. Did it amount to bad faith? Was it dishonest, malicious, or oppressive under the analysis of *Aetna Cas. & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984) and its progeny?

This court has stated that the tort of first-party bad faith requires a showing of dishonest, malicious, or oppressive conduct by the insurer in an effort to avoid contractual liability. *Aetna Cas. & Surety Co. v. Broadway Arms Corp., supra; see also R.J. "Bob" Jones Excavating Contractor, Inc. v. Firemen's Ins. Co.*, 324 Ark. 282, 920 S.W.2d 483 (1996); *Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984). While the evidence in this case may have been insufficiently developed to prove absolutely the presence of bad faith, I posit that the denial of coverage notwithstanding the plain language of the policy is *prima facie* evidence of bad faith sufficient to avoid summary judgment. Farm Bureau denied coverage for a lengthy period of several months, at least enough time to force the insured to seek legal aid with his claim. His lawyer's detailed billing record shows that considerable effort was expended to resolve the dispute over a minor claim, all of which was resisted by the insurer. And while the suit itself may have somehow encouraged the insurer to dig in its heels on the claim, that is not in itself sufficient justification for continuing to deny a claim. I do not think an insured's filing suit can be fairly characterized, as the majority has suggested, as sufficient provocation of an insurer to shield the insurer from being found guilty of engaging in bad faith. Adversarial relationships are often spawned by the passage of time and what appears on the surface to be slight resistance. It is possible, rather, that Farm Bureau's personnel, perhaps all the while smiling, consoling, and reassuring their policyholder of their personal regrets, were acting in bad faith. I disagree with the majority's apparent belief that all evidence of bad faith must have occurred before suit is filed, or that it must be patent and striking. Such a belief would encourage all insurers "merely" to delay payment of claims and deny coverage long enough to provoke their insureds to file suit for recovery, after which the insurers are effectively insu-

lated from bad-faith claims. That would be especially true in such a case as the one at bar, where a claim of less than $2,000 would produce a very slight penalty under the 12% provisions of Ark. Code Ann. § 23-79-208. I am of the opinion that inordinate foot-dragging and delay or unreasonable denial of coverage may be strong evidence of bad faith. I would let that issue go to the jury.

Therefore, I respectfully dissent.