NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY *v.* Bruce A. HESLIP

91-300                                          832 S.W.2d 463

Supreme Court of Arkansas
Opinion delivered May 11, 1992

320

*Stanley, Harrington, & Mars*, by: *Thomas A. Mars*, for appellant.

*Hixon, Cleveland, & Rush*, by: *David L. Rush*, for appellee.

STEELE HAYS, Justice. This dispute, now before us for the second time, involves disability benefits claimed under a policy of group insurance issued by Northwestern National Life Insurance Company (Defendant/Appellant) to the National Guard Association of the United States Insurance Trust. Bruce Heslip (Plaintiff/Appellee) was a member of the group and an insured under the policy.

In the first appeal we reversed a judgment awarded to Heslip and remanded the case for retrial. *Northwestern National Life Insurance Co.* v. *Heslip*, 302 Ark. 310, 790 S.W.2d 152 (1990). The verdict following the second trial was again against Northwestern and the company has appealed anew. Finding no error, we affirm the judgment appealed from.

In 1985, Bruce Heslip was an employee of the Department of the Army and a member of the Arkansas National Guard. He joined the National Guard in August 1962. As a member of the National Guard he was eligible to purchase group disability insurance through the National Guard Association of the United States Insurance Trust (NGAUS). This insurance was underwritten by appellant, Northwestern National Life Insurance Company.

## The First Two Injuries

Heslip had three episodes involving his back. The first occurred on March 15, 1985, while Heslip was pushing a vehicle at his home. He was unable to work until April 6, 1985. He returned to work on "light duty" status, but was injured a second time on May 17, 1985, while at work, when he had a recurrent eipisode with his back. Heslip spent six days in traction and was unable to work from May 20 to June 10, 1985. From June 10 to June 29 Heslip was on light duty, returning to regular duty on the 29th. Heslip received no benefits from Northwestern for the first injury because he returned to work less than thirty days later. For the second injury on May 17, Heslip received disability benefits

from Northwestern for June 16 through June 29, 1985.

## The Third Injury

After Heslip had returned to regular duty status, he again had an episode with his back on July 17, 1985, while at work. Heslip applied for and received benefits for this injury from the Department of Labor for September 1, 1985 through January 3, 1986. (T.348, T.636-639, Df Ex. 4 and 5).

Heslip subsequently applied for disability benefits pursuant to his National Guard Association of the United States (NGAUS) group insurance policy, and requested benefits from January 4, 1986, forward. Heslip claimed to be disabled from his March 15, 1985, injury and requested benefits based on that injury. Northwest Insurance denied benefits on several grounds. Heslip then brought suit and the jury found for Heslip and awarded him $19,800. The trial court awarded a twelve percent statutory penalty and attorneys' fees of $10,000.

In its first appeal Northwestern's assignments of error included an allegation that the trial court erred in refusing a requested instruction on estoppel, justified because there was evidence that Heslip had successfully pursued a remedy inconsistent with his suit against the insurance company. We agreed and reversed, finding that the trial court should have given the estoppel instruction to the jury. On retrial, appellant sought an estoppel instruction for the jury which the trial court gave. The jury again found for Heslip and awarded $36,000, the full amount of the benefits pursuant to the policy, plus costs, twelve percent penalty, attorneys' fees and prejudgment interest.

In this appeal Northwestern raises three arguments for reversal and Heslip cross appeals from the amount of attorneys' fees and costs awarded. Northwestern argues that the trial court erred in denying its motion for a directed verdict based on the doctrine of estoppel and on a provision of the policy excluding injuries covered by workers compensation. We affirm the trial court on both points as we think those issues were properly submitted to the jury. Nor do we find the exclusion clause in question in the abstract.

As its second point Northwestern argues that the trial court erred in ruling that Heslip's state law cause of action was not

pieempted by ERISA (Employee Retirement Income Security Act), 29 U.S.C. § 1001 et seq. (1985 & Supp. 1991).

ERISA is a comprehensive federal statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. It sets minimum uniform standards and provides for uniform remedies in the enforcement of the plans. *See Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85 (1983). Northwestern urges that Heslip's claim should be prosecuted under the ERISA statute, rather than the state common law cause of action for breach of contract. As to the substance of Heslip's claim, the remedy would not vary materially under state or federal jurisdiction. However, under the state cause of action the insured may recover a twelve percent penalty against the insurance company under Ark. Code Ann. § 23-60-108 (1987), not available under ERISA.

The trial court denied Northwestern's motion without comment, thus it is not clear if the trial court found the insurance plan did not come under ERISA in the first instance, or whether it came within ERISA but was exempted on some other basis. Be that as it may, we agree with the result.

Under ERISA, coverage is set out in 29 U.S.C. § 1003(a), and the exception in section 1003(b)(1).

> (a)   Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
>
> (1)   by any employer engaged in commerce or in any industry or activity affecting commerce;
>
> *        *        *        *
>
> (b)   The provisions of this subchapter shall not apply to any employee benefit plan if—
>
> (1)   such plan is a governmental plan (as defined in section 1002(32) of this title);
>
> *        *        *        *

■ While we might first examine whether the plan in this case comes within the scope of ERISA under 29 U.S.C. § 1003

and then determine whether it falls within an exception, *see* e.g. *Kane* v. *Connecticut General Life Insurance Co.*, 967 F.2d 489 (9th Cir. 1989), it is not necessary to make that determination because we are satisfied the plan falls within the governmental exception under 1003(b). The burden is on the party asserting the ERISA preemption to establish the existence of a plan which would invoke ERISA's exclusive remedy provisions. *Terry* v. *Protective Life Insurance Co.*, 717 F. Supp. 1203 (S.D. Miss. 1989); *Kanne* v. *Connecticut General Life Insurance Co., supra.*

The definitions in the act are found in 29 U.S.C. 1002, and the one of concern here is "governmental plan" found at 1002(32):

> 1002(32)  The term "governmental plan" means a plan established or maintained for its employees by the government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.

What constitutes a "governmental plan" for purposes of this act is still a developing area of the law. *See* e.g. *Rose* v. *Long Island R.R. Pension Plan*, 828 F.2d 910 (2nd Cir. 1987); *Donald Rubin Inc.* v. *Schwartz*, 559 N.Y.S.2d 307 (A.D. 1 Dept. 1990). However, as the law currently exists, we believe the policy falls within the governmental exception.

Two points must be reviewed to determine whether the plan falls within the exception. The first is whether a governmental entity, as defined under 1002(32), is involved. Second, whether that governmental entity has acted so as to have "established or maintained" the plan. *See Rose* v. *Long Island, supra.* Undeniably the National Guard is an "agency or instrumentality" of the United States Government. *And see Rose* v. *Long Island, supra.* However, Northwestern submits the Guard itself did not deal directly with instituting or administering the insurance plan. Without citing authority, Northwestern argues the "United States Government" did not actually participate in this plan in any manner. We disagree.

The evidence reflected that the National Guard was a member of the National Guard Association of the United States (NGAUS). NGAUS in turn established the National Guard

Association of the United States Insurance Trust (NGAUSIT), which organization was established for the purpose of purchasing insurance benefits for members of NGAUS. The officers of the association serve as trustees and the trust is responsible for providing, or seeking, the insurance benefits the trustees want to provide to eligible members. The trust administers the policy on a day-to-day basis, the "trust investments" are invested by the officers of the association, and the benefits are determined by the trust.

Northwestern tacitly acknowledges that the plan has been established and maintained by NGAUSIT or NGAUS, or both, but implies that neither of these organizations would qualify as a government entity under 29 U.S.C. 1002(32).

An analogous argument was made in *Kanne v. Connecticut, supra,* involving a private employer. The question was whether the private employer, Harlow Carpets, had established or maintained the program, even though it had never directly dealt with the insurance plan at issue. Harlow belonged to an employer association called the Associated Builders and Contractors (ABC) which administered the plan. Harlow subscribed to the group health insurance plan administered by ABC. "Pursuant to the requirements of ERISA, the plan was established as a trust entity, called the ABC Trust." The trust purchased the policy from the defendant insurance company, and the plaintiff was an employee of Harlow and was covered by the policy. The insured in *Kanne,* seeking to avoid ERISA coverage, argued that the plan was not established by the employer, Harlow, because Harlow's function with respect to the program was minor and ministerial. The court replied:

> However, the problem with the [insureds] argument is the apparent assumption that Harlow Carpets' functions with respect to the plan, determine ERISA coverage. According to ERISA § 3(5):
>
>> The term "employer" means any person acting directly as an employer, or *indirectly in the interest of an employer, or indirectly in the interest of an employer,* in relation to an employee benefit plan, *and includes a group or association of employers acting for an employer in such capacity.* [Emphasis added.]

29 U.S.C. § 1002(5). Under this definition, ABC can be an ERISA employer for purposes of our analysis.

■ In effect, the court in *Kanne* found the association to be the alter-ego of the corporation. To the extent the record was developed in this case, the same is true. Both NGAUS and NGAUSIT were acting for the National Guard, the employer, in the same capacity as the ABC and the ABC Trust were acting for Harlow Carpets in *Kanne, supra. Accord see Silvera* v. *Mutual Life Insurance Co. of New York*, 884 F.2d 423 (9th Cir. 1989). With the United States government, or its agent, acting to establish and maintain the insurance plan, we hold the plan is excepted as a "governmental plan" under 29 U.S.C. § 1002(32) and, therefore, not preempted by ERISA.

■ As its final point, Northwestern argues the trial court miscalculated the prejudgment interest awarded to Heslip. Northwestern requests that even if we do not reverse, we should modify the judgment with respect to prejudgment interest. Northwestern did object to the amount of prejudgment interest in the precedent for judgment, but it has not shown us how the amount is incorrect or excessive.

Turning to the cross-appeal, Heslip argues that the trial court erred in failing to award the total amount of attorneys' fees sought by his attorneys, i.e., $26,213.00 and costs of $969.49. The trial court awarded attorneys' fees of $19,500.00, and Heslip argues the amount is inadequate based entirely on the amount of hours spent. We do not regard that as a persuasive reason to overrule the trial court.

■ The standard of review is one of abuse of discretion, and the trial court is to consider a number of factors in addition to the number of hours worked. We reviewed this recently in *State Farm Fire & Casualty Co.* v. *Stockton*, 295 Ark. 560, 750 S.W.2d 945 (1988):

## REASONABLENESS OF ATTORNEYS' FEES

State Farm also argues the amount of the award of attorneys' fees was excessive. We disagree.

[2, 3] In the event an insurer wrongfully refuses to pay benefits under an insurance policy, the insured may

recover the overdue benefits, twelve percent (12%) damages upon the amount of the loss, and reasonable attorneys' fees. Arkansas Code Ann. § 23-79-208 (1987) [formerly Ark. Stat. Ann. § 66-3238 (Repl. 1980)]. The computation of attorneys' fees is governed by such factors as the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employement by the lawyer. *See Southall* v. *Farm Bureau Mutual Ins. Co. of Arkansas, Inc.*, 283 Ark. 335, 676 S.W.2d 228 (1984); *Equitable Life Assur.* v. *Rummel*, 257 Ark. 90, 514 S.W.2d 224 (1974). While courts should be guided by these recognized factors, there is no fixed formula in determining the reasonableness of attorneys' fees. *Id.* Because of the trial judge's intimate acquaintance with the record and quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.* Accordingly, an award of attorneys' fees will not be set aside absent an abuse of discretion by the trial court. *Id.*

■ Given the trial court's discretion on this issue, its familiarity with the case and its superior perspective, Heslip has not established an abuse of discretion in the amount awarded.

For the reasons stated the judgment is affirmed.