Cite as 2020 Ark. 194

# SUPREME COURT OF ARKANSAS

No. CV-19-789

|  |  |
|---|---|
| | **Opinion Delivered:** May 14, 2020 |
| LARRY WALTHER, DIRECTOR, ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION; ANDREA LEA, STATE AUDITOR; DENNIS MILLIGAN, STATE TREASURER; AND THE CENTRAL ARKANSAS PLANNING AND DEVELOPMENT DISTRICT APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-16-862] HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| V. | |
| MIKE WILSON APPELLEE | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL. |

**KAREN R. BAKER, Associate Justice**

This appeal returns for a third time and is a challenge to an award of attorney's fees. Appellants Larry Walther, Director of the Arkansas Department of Finance and Administration (DFA); Andrea Lea, State Auditor; Dennis Milligan, State Treasurer (collectively, the State); and the Central Arkansas Planning and Development District (the CAPDD) appeal from the Pulaski County Circuit Court's award of attorney's fees to appellee Mike Wilson in his illegal-exaction lawsuit that successfully challenged the constitutionality of certain legislative acts (Acts).

A brief summary of Wilson's 2005 illegal-exaction suit, in addition to the 2016 lawsuit in which Wilson was awarded the attorney's fees at issue here, is helpful in understanding the background. In July 2005, Wilson filed a complaint against the same State defendants as in this case, as well as against other defendants who had received public funds, such as the city of Bigelow, Cleburne County, the city of Jacksonville, the Jacksonville Boys and Girls Club, the Jacksonville Museum of Military History, and Reed's Bridge Preservation Society. Wilson alleged that the acts appropriating those funds violated article 5, section 29 of the Arkansas Constitution and Amendment 14 to the Arkansas Constitution. The circuit court granted summary judgment in favor of the defendants on the majority of Wilson's claims, and he appealed. We dismissed most of the points on appeal due to lack of a final order, and we reversed and remanded with respect to one claim. *Wilson v. Weiss*, 368 Ark. 300, 245 S.W.3d 144 (2006). After a final order was entered, Wilson again appealed, and we held that all the Acts challenged by Wilson were unconstitutional. *Wilson v. Weiss*, 370 Ark. 205, 258 S.W.3d 351 (2007). Specifically, we stated that the appropriations to each defendant for "state assistance" or for "state aid" were invalid because they did not provide a distinct purpose for the appropriation as required under article 5, section 29 of our state constitution. *Id.* We further held that the Acts violated Amendment 14 of our constitution because they amounted to special or local legislation. *Id.* Wilson did not request attorney's fees in connection with the 2005 lawsuit.

Following our 2007 decision, the Arkansas Association of Development Organizations (AADO), which is composed of the eight Arkansas Planning and

2

Development Districts (PDDs), approached the legislature with a proposal to create a new grant program that would be funded by the State, administered by the PDDs, and approved by the PDD's board of directors. The proposal was implemented during the Eighty-sixth General Assembly in 2007 with each PDD being awarded a $250,000 grant, and the funding of this program continued to increase through the Ninetieth General Assembly in 2015. In 2015, the legislature passed eight identical acts, each of which appropriated an equal amount of funds ranging from $1 million to $8 million from the General Improvement Fund (GIF) to each of the eight PDDs in Arkansas, including the CAPDD. The only purpose stated in these appropriation bills was "for grants to planning and development districts." The appropriations were funded by Act 1146 of 2015, which authorized a special subset of GIF funds called the "90th Session Projects Account" for the disbursements to the PDDs. CAPDD itself ended up receiving a total of $2,987,500 in "grants" from the 2015 legislative session.

On February 12, 2016, Wilson filed an illegal-exaction complaint against the State and CAPDD, which is the subject of the appeal before us. As in his 2005 lawsuit, Wilson alleged that the challenged 2015 Acts violated both article 5, section 29 of the Arkansas Constitution and Amendment 14 to the Arkansas Constitution. Wilson sought a declaratory judgment that the Acts were unconstitutional, an injunction preventing further disbursements by the State, an injunction prohibiting CAPDD from making further grants, and an order directing CAPDD to refund the disbursements. Wilson also requested costs and attorney's fees in this suit. Wilson filed an amended complaint on April 4, 2016,

3

adding a claim for declaratory judgment that appellees had violated Arkansas Code Annotated sections 14-166-204 and -205.

Wilson filed a motion for summary judgment on his complaint and amended complaint, and the State responded and filed a cross-motion for summary judgment. After a hearing on the motions, the circuit court entered an order on November 9, 2016, ruling that the challenged Acts satisfied Amendment 14, and article 5, section 29 and that Wilson had failed to state a claim in his amended complaint. Therefore, the circuit court granted summary judgment to the State and dismissed Wilson's suit.

Wilson appealed, and we reversed and remanded. *Wilson v. Walther*, 2017 Ark. 270, 527 S.W.3d 709 (*Wilson I*). We agreed with Wilson that the challenged Acts were unconstitutional as written because they failed to state their distinctive purpose in violation of article 5, section 29. *Id.* We also rejected the State's claims on cross-appeal that Wilson lacked standing and that the appeal was moot because the funds had already been dispersed by the State. *Id.* We noted that the taxpayers would still be entitled to repayment of the GIF funds still in CAPDD's possession, although the exact amount of those funds was not known at that time. *Id.*

After the mandate in *Wilson I* issued and the case was remanded to the circuit court, Wilson filed a motion on remand for declaratory judgment, permanent injunction, restitution, costs, and attorney's fees. He claimed that he was entitled to the relief sought in his original and amended complaint––namely, a permanent injunction against the State preventing it from making or approving disbursements under the authority of the Acts

4

declared unconstitutional by this court; a declaratory judgment to that effect; an order requiring CAPDD to refund the illegal disbursements to the state treasury as restitution; his costs in the amount of $4,588.09; and attorney's fees of one-third of "the common economic benefit pool accruing to state taxpayers" due to his efforts or such other reasonable attorney's fees as the court may determine according to law.

The State filed a response to the motion, agreeing that Wilson was entitled to a declaratory judgment that the challenged Acts were unconstitutional but disagreed that he was entitled to any other relief. The State responded that there were no unobligated funds to be returned to the treasury and requested that a hearing be held to determine the amount and disposition of any 2015 GIF funds in the possession of CAPDD. With regard to costs and attorney's fees, the State argued that these claims were barred by sovereign immunity. The State also contended that there was no authority for an award of attorney's fees in a "public funds" illegal-exaction case such as this one.

In his reply to the State's response, Wilson indicated that he was not claiming a statutory basis for attorney's fees but was instead relying on *Lake View School District No. 25 v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000), in which this court held that an economic benefit to the State had accrued by Lakeview's efforts and that attorney's fees should be awarded on this basis. With regard to the State's sovereign-immunity argument, Wilson requested that the court take judicial notice of this court's award of appellate briefing costs in *Wilson I*. He further argued that sovereign immunity was not available as a defense in an illegal-exaction case.

5

At the February 20, 2018 hearing on Wilson's motion, the parties agreed that CAPDD had in its possession $969,799.60 of the GIF funds at issue. The remainder of the $2,547,804 in GIF funds had already been distributed as grants. On March 29, the circuit court entered an order finding that Wilson had "conferred a benefit to taxpayers in the amount of the GIF funds appropriated but unspent" and that he was therefore entitled to an award of attorney's fees in the amount of one-third of the remaining GIF funds, or $323,266.53. The court ordered that CAPDD remit the balance of the funds to the state treasury. In denying the State's assertion of sovereign immunity, the circuit court found that it "does not apply to unconstitutional, illegal, or *ultra vires* acts of the State." The State appealed the circuit court's order.

On appeal, we held that sovereign immunity did not apply because the State had abandoned any interest in the registry funds once they were dispersed to the CAPDD. *Walther v. Wilson*, 2019 Ark. 105, 571 S.W.3d 897 (*Wilson II*). We further held that Wilson could receive attorney's fees on the basis that a substantial benefit had been conferred to the taxpayers. *Id.* However, we remanded the matter to the circuit court with instructions to employ the factors set forth in *Chrisco v. Sun Industries*, 304 Ark. 227, 800 S.W.2d 717 (1990). We stated that "[b]ased on the record before us, the circuit court did not make any findings with respect to what a reasonable attorney's fee would be in this case and awarded the one-third in fees that Wilson had requested. Accordingly, we remand to the circuit court for it to consider the *Chrisco* factors in determining whether the amount

6

of fees requested by Wilson is reasonable under the circumstances." *Wilson II*, 2019 Ark. 105, at 7, 571 S.W.3d at 901.

On remand, Wilson filed a motion and an amended motion for attorney's fees, in which he again requested an attorney's fee of one-third ($323,266.53), plus prejudgment interest from February 12, 2016, to May 29, 2019, for a total of $386,927.89. Attached to his motion were a brief in support; orders from prior cases in which Wilson's attorney, John Ogles, had received attorney's fees; an itemization of hours expended and fees incurred by CAPDD's counsel, for a total of 600 hours and $164,720.50; the written contingency-fee contract between Wilson and Ogles that was dated on April 19, 2019, but stated that it was retroactive to February 12, 2016; and an affidavit from Wilson indicating that he had personally spent 294.2 hours on the case, which would be a total of $102,970 in fees at his hourly rate of $350.

On June 19, 2019, the circuit court held a hearing and heard arguments from counsel and from Wilson. On July 1, 2019, the circuit court entered an order discussing the *Chrisco* factors and finding that these factors justified the 1/3 contingency fee requested by Wilson. The circuit court awarded $323,266.53 in attorney's fees but denied Wilson's request for prejudgment interest. This appeal followed.

The State timely appealed and presents three points on appeal: (1) the circuit court abused its discretion in awarding Ogles $323,266.53 in attorney's fees because Ogles failed to satisfy his burden of proof; (2) the circuit court's award of $323,266.53 was an abuse of discretion because it is clearly unreasonable based on the evidence submitted; and (3) the

7

circuit court clearly erred in its consideration of the *Chrisco* factors. Wilson cross-appealed and presents one point: that the circuit court erred when it denied Wilson prejudgment interest. We affirm on appeal and on cross-appeal for the reasons that follow.[1]

## I. *Direct Appeal*

### A. Standard of Review

In awarding attorney's fees, we have explained that "factors to consider in a motion for attorneys' fees include (1) the experience and ability of the attorney, (2) the time and labor required to perform the legal service properly, (3) the amount involved in the case and the results obtained, (4) the novelty and difficulty of the issues involved, (5) the fee customarily charged in the locality for similar legal services, (6) whether the fee is fixed or contingent, (7) the time limitations imposed upon the client or by the circumstances, and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer. *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718–19. "Because of the circuit court's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the circuit court in assessing the applicable factors. *Phi Kappa Tau Hous. Corp.* [*v. Wengert*], 350 Ark.

---

[1]On October 17, 2019, Wilson filed a motion to dismiss asserting that the State did not have standing to bring this appeal and contending that the State relinquished and abandoned the funds in the registry of the court. On October 22, the State responded and on December 5, we took the motion with the appeal. However, we do not reach the merits of the motion to dismiss because the issue was not preserved for review. Although the circuit court ruled from the bench that the State had standing to bring this appeal, in its written order, the circuit court declined to reach the issue. Therefore, Wilson did not obtain a ruling, the issue is not preserved for our review, and we deny the motion to dismiss.

[335], 341, 86 S.W.3d [860,] 860 [(2002)]. Accordingly, the amount of the award will be reversed only if the appellant can demonstrate that the circuit court abused its discretion. *Id.*, 86 S.W.3d at 860." *City of Little Rock v. Nelson*, 2020 Ark. 19, at 4–5, 592 S.W.3d 666, 669. "An award of attorney's fees will not be set aside absent an abuse of discretion. *See Harris v. City of Fort Smith*, 366 Ark. 277, 234 S.W.3d 875 (2006)." *Hanners v. Giant Oil Co. of Ark.*, 373 Ark. 418, 425, 284 S.W.3d 468, 474 (2008). With these standards in mind, we turn to the State's points on appeal and Wilson's point on cross-appeal.

## B. Points on Appeal

### 1. *Failure to satisfy burden for attorney's-fee award*

For its first point on appeal, the State argues that the circuit court abused its discretion in awarding Ogles $323,266.53 in attorney's fees because Ogles failed to satisfy his burden of proof. The State contends that "Ogles woefully failed to meet [his] burden because he failed to submit any evidence regarding his personal work in this matter." The State further asserts that Ogles did not "submit timesheets and no information about his personal work" or evidence supporting a "substantial benefit" in the matter supporting a fee award. Additionally, the State contends that Wilson, who is an attorney and the plaintiff in this case, "drafted most, if not every, significant pleading in this matter" but Ogles cannot rely on Wilson's hours. Wilson responds that his motion, brief, and evidence presented at the hearing support the circuit court's finding that Ogles performed significant amounts of work in this matter and support the circuit court's decision. The record demonstrates that Wilson responded with the following:

- Ogles has a contingency fee agreement for this matter.
- Ogles did not record his time because he was hired on a contingency fee.
- Ogles did not estimate his time spent on the case because any estimate would be a guess.
- Ogles spent an incredible amount of time pursuing this litigation on all fronts over four years.
- Ogles litigated every issue aggressively in circuit court and two appeals to the Arkansas Supreme Court.
- Ogles stated that the case was time consuming because the facts and evidence were complex.
- Ogles stated that he devoted "whatever time" was required to bring the case to conclusion in lieu of other work because he was working on a contingency fee and needed to resolve this matter.
- Ogles stated that the circuit court docket sheets support the complexity and time spent on this matter because the case has gone on for four years.
- Ogles stated that the court's opinions in *Wilson I* and *Wilson II* also demonstrate his contribution to the case saving taxpayers potentially $120 million with the success of his work.
- Ogles stated that he was counsel of record from day one and worked on the case continuously.

The State replies that "Ogles submitted absolutely no evidence about the time he personally worked on this case or his hourly rate. . . . [D]espite requests from opposing counsel and the opportunity to address the issue on remand, Ogles refused to provide even an estimation of any hours he spent on this case."

At issue is the circuit court's finding: "this court has reviewed the pleadings, the evidence presented and introduced, and the arguments of counsel. For the reasons stated in open court, the Court awards Ogles Law Firm, P.A., an attorney's fee of $323,266.53." Further, at the hearing, in awarding the fee, the circuit court explained, "I think there was substantial work, and it's obvious that to fight that, it's going to take, and, while Mr. Ogles doesn't have a timesheet, his, he wasn't getting paid by time. He was getting paid on a

contingent fee which *Chrisco* says whether the fee is fixed or contingent. Of course, the amount involved in this case was really astronomical. And actually, the amount that was involved in this case went far beyond just that we got in the bank here. The principal spreads over the whole state. And the result is obtained. I mean it's obvious that they, they won this. And the result is greater than this particular case. And, you know, there's no way that you can measure the fees for this type of legal work as you have nothing to measure it against. What you have to measure it against is the ability of the lawyer to prevail in this particular matter. The other problem is that when you take a case on a contingency, it restricts your ability to do other work."

Here, the circuit court was fully acquainted with this record and the proceedings involved. As Ogles explained in the hearing, he did not keep his time and explained to the circuit court, "You're familiar with all the parties, you're familiar with my work in the past." Ogles further explained that CAPDD alone had spent hundreds of hours on the case as demonstrated by the billing records submitted to the court, and Ogles responded to everything that was filed. Further, Ogles stated that "it was a hard case. I mean the State of Arkansas fought over and over and over because they wanted CAPDD to have this money. I mean they, they did everything they possibly could to make sure that this money did not come back to the State of Arkansas." Further, the circuit court considered the *Chrisco* factors discussed above in its order.

On review, we note we have "often observed that there is no fixed formula in determining reasonable attorney's fees. Due to the trial judge's intimate acquaintance with

11

the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors." *Phi Kappa Tau Hous. Corp.*, 350 Ark. at 341, 86 S.W.3d at 860 (internal citation omitted). Further, we have held that although it is helpful to have time records if ones were recorded, "there is not now, and never has been, any rule of law or procedure in this state that requires submission of time records in support of a request for payment of attorneys' fees. While the time spent is an important element to be considered in determining the reasonable value of an attorney's services, it is not the controlling factor, and is sometimes a minor one." *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980); *see also Lytle v. Lytle*, 266 Ark. 124, 583 S.W.2d 1 (1979) (holding that other factors were just as important as the time devoted to the case). Finally, in *Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442–43, 10 S.W.3d 854, 856-57 (2000), we affirmed the circuit court's finding that a contingency-fee award rather than time spent on the case was an appropriate award. In *Phelps*, Phelps's attorney was not able to present an actual amount of time spent preparing Phelps's case. Instead, Phelps's attorney "submitted a five-page itemization of particular tasks and the dates on which they were performed. There was no indication of the time spent on each of the tasks; . . . [Phelps's attorney] acknowledged that his office's records were not completely accurate, stating that 'we had not kept this matter entirely timed during the work we were doing on it because of it being a contingency fee case.' Thus, the total time allegedly spent on the case was merely an estimation arrived at after the fact." In affirming, we explained that "the time spent on a case is but one factor to consider, and we do not regard this argument as a persuasive

12

reason to reverse the chancellor's judgment. *See* [*Nw. Nat'l Life Ins. Co. v. Heslip*, 309 Ark. 319, 832 S.W.2d 463 [1992]." *Id.*

Here, as in *Phelps*, Wilson's attorney was not able to present an actual amount of time spent preparing Wilson's case. Instead, Wilson provided other types of evidence that established the amount of work that Ogles performed in representing him in this illegal-exaction suit. Based on the record discussed above, we are unpersuaded by the State's argument. Accordingly, we affirm the circuit court's award of attorney's fees.

## 2. *Reasonableness of the fee award*

For its second point on appeal, the State argues that the circuit court's award of $323,266.53 was an abuse of discretion because it is clearly unreasonable on the basis of the evidence submitted. We note that in arguing that the fee was not reasonable, the State alleges that the circuit court's findings are unreasonable, contending the award is not supported by the record. The State challenges the fee award relative to the *Chrisco* factors in a separate point on appeal.

The State asserts that the award was unreasonable and alleges the award is internally inconsistent because the circuit court relied on combined timesheets from attorneys other than Ogles that worked on the case and then doubled the amount submitted to render its award. The State also contends that the circuit court "offered absolutely no explanation or justification as to why Ogles was entitled to double the amount of hours billed by Jones and Pruitt." The State further contends that "while not explicitly contained in the circuit court's findings of fact, a review of the evidence suggests that the only way the circuit court

13

could have arrived at double the time billed by Jones and Pruitt was if it considered the timesheets of Wilson, Ogles's client." Wilson responds that the State erroneously posits that attorney's fees cannot be awarded absent contemporaneous time records. Wilson further responds that as a result of his work on this lawsuit and this court's finding that the statutes were unconstitutional, the taxpayers have saved as much as $240 million.

In its order, the circuit court made the following findings:

> A substantial amount of work was involved in this case, supported in part by the time Sam Jones submitted (representing CAPDD) stating that he spent over six hundred (600) hours on the case. In order to adequately bring this lawsuit and prevail, it is obvious Mr. Ogles would have to commit substantial time and labor. Although Mr. Ogles did not maintain a time sheet. Mr. Jones' work is instructive regarding the amount of time and labor this case demanded. . . . The amount involved in this case was astronomical. . . . In this area, it is common for plaintiff attorneys to enter into a contingency agreement in cases such as this and for their fee to be wholly dependent upon the outcome of the case. The fee agreement in this case is not out of the norm for this area and this type of work.

Here, the record demonstrates that at the hearing, Ogles stated that this case "took up time. . . . You know how much time it took. We have the docket sheets. [It took] a lot of time . . . over three years. This has been ongoing." Ogles explained that "time limitations is not really an issue in this case because Plaintiff's counsel simply expended whatever time was necessary to litigate this case to a successful conclusion. . . . [T]his case is in its third year of active litigation and the Court is well aware of the volumes of pleadings and briefs which have been prepared. Devoting all the time which has been devoted to this case obviously limited the attorney's time for working on other cases." Again, the State's argument fails to recognize the fact that Ogles's fee was based on a

contingency-fee agreement and not solely on his time spent on the case. The timesheets of Wilson and opposing counsel were provided merely to show the large amount of time that was required by all attorneys involved in the litigation and that the one-third contingency fee was reasonable in light of that time spent. Further, even though the estimated fees of CAPDD's counsel amounted to only half of the fees awarded to Ogles, Ogles had to respond to the pleadings and motions filed by *two* opposing parties—the State and CAPDD. With regard to Wilson's timesheets, he has repeatedly stated that he is not asking for attorney's fees and that his timesheets were only a demonstration of the time that he and Ogles both expended. Wilson rejected the assertion that Ogles did not participate in the legal work reflected on those timesheets. Further, we reject the State's argument that fees cannot be awarded for appellate work. We have previously directed a circuit court to include fees for time spent on the appeal. *See, e.g.*, *Griffin v. First Nat'l Bank of Crossett*, 318 Ark. 848, 888 S.W.2d 306 (1994). The State relies on *Race v. National Cashflow Systems, Inc.*, 307 Ark. 131, 817 S.W.2d 876 (1991), for its position that awards cannot be made for appellate work. However, *Race* is distinguishable because the circuit court in *Race* had exceeded our mandate by reopening the case to award additional attorney's fees for the appeal. Here, our mandate specifically directed the circuit court to determine what attorney's fees were reasonable in this case. Accordingly, the State's argument that the fees awarded here were excessive or unreasonable based on the evidence presented is not persuasive.

3. *Chrisco factors*

15

For its final point on appeal, the State contends that the circuit court clearly erred in its consideration of the *Chrisco* factors. The State asserts that the circuit court failed to properly consider four of the eight factors and that such an oversight is clear error. Specifically, the State contends that the circuit court failed to properly consider four of the eight factors: (1) Ogles's experience and ability; (2) the amount of time and labor Ogles spent on the case and the results obtained; (3) whether the fee is fixed or contingent; (4) and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of Ogles.

At issue is the circuit court's July 1, 2019 order, which states in pertinent part:

Experience & Ability: The evidence showed that Mr. Ogles was an experienced attorney who was quite capable of handling this matter, shown in part by other drafts and cases submitted demonstrating his experience and skill. Mr. Ogles had the ability to prevail in this case, and did, in fact, do just that.

Time & Labor Required to Perform Legal Services: A substantial amount of work was involved in this case, supported in part by the time Sam Jones submitted stating that he spent over six hundred (600) hours on the case. In order to adequately bring this lawsuit and prevail, it is obvious that Mr. Ogles would have to commit a substantial amount of time and labor. Although Mr. Ogles did not maintain a time sheet, Mr. Jones' work is instructive regarding the amount of time and labor this case demanded.

Amount Involved in Case & Results Obtained: The amount involved in this case was astronomical––going far beyond just what is held in the court registry. This case involved over nine-hundred thousand ($900,000) dollars in the court registry, which was only a small portion of the actual statewide amount. The future amounts of money that could have potentially been spent that have now been curtailed by this lawsuit must also be taken into account. Further, Mr. Ogles prevailed on his claim, obtaining a result that reaches far greater than this particular case.

Fee Customarily Charged in Locality for Similar Legal Services: As noted above, Mr. Jones charged three-hundred fifty ($350) dollars an hour and worked six

16

hundred (600) hours on the instant case. Mr. Ogles entered into a contingency fee agreement. In this area, it is common for the plaintiff attorneys to enter into a contingency agreement in cases such as this and for their fee to be wholly dependent upon the outcome of the case. The fee agreement in this case is not out of the norm for this area and this type of legal work.

Fixed Fee or Contingent Fee: Mr. Ogles took this case on a contingency fee. A common arrangement amount plaintiff attorneys in this area.

Likelihood that Acceptance will Preclude Other Employment: Taking this case upon a contingency fee and the amount of time required to pursue this case restricted Mr. Ogles ability to do other work. Moreover, Mr. Ogles bore the potential burden of lost time and resources if he failed to prevail in the case.

Time Limitations Imposed Upon Client or By Circumstances: While there was not necessarily a stringent time limitation at issue, the other *Chrisco* factors weigh in favor of awarding Mr. Ogles a one-third (1/3) contingency fee.


The State first contends that there is very little evidence in the record to support the finding that Ogles had the requisite experience and ability to handle this matter. We disagree. The record demonstrates that Ogles has been practicing law since 1989, has been licensed to practice in several state and federal courts, and has been practicing in front of the circuit court holding the hearing throughout his career. Further, Ogles submitted that the circuit court judge holding the hearing was familiar with Ogles's work because the Wilson matter had been in that court for the four-year litigation. Likewise, Ogles submitted that as a plaintiff's attorney, he specialized "in everything." Therefore, based on the record before us, the record supports the conclusion that the circuit court considered this factor.

Second, the State contends that the circuit court erred in its consideration of the *Chrisco* factors and its determination of time spent on the case, alleging that the circuit

17

court-made an assumption that Ogles had spent a substantial, unspecified amount of time on the case based on timesheets of other attorneys. As discussed above, this argument lacks merit. Ogles did not record his time because he was handling the case on a contingency-fee basis and submitted the timesheets of other attorneys involved to show the circuit court the amount of time spent on the case. Accordingly, the record establishes that the circuit court considered this factor.

Third, the State contends that the circuit court erred in relying on Ogles's contingency-fee agreement as justification and alleges that a fee agreement has no bearing on the reasonableness of the fee. As discussed above, in *Phelps*, 340 Ark. at 442–43, 10 S.W.3d at 856–57, we affirmed the circuit court's finding that a contingency-fee award rather than time spent on the case was an appropriate award and explained that "the time spent on a case is but one factor to consider, and we do not regard this argument as a persuasive reason to reverse the chancellor's judgment. *See Heslip*, 309 Ark. 319, 832 S.W.2d 463." The State further contends that the fee agreement is invalid because it was not entered into or reduced to writing when this suit was commenced, as required by Arkansas Rule of Professional Conduct 1.5. However, while the State raised the issue in response to Wilson's motion for attorney's fees, the State did not obtain a ruling, and the issue is not preserved. In any event, the State's argument is misplaced. Rule 1.5(b) requires that the fee "shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate." Further, Rule 1.5(c) provides that a

18

contingency-fee agreement "shall be in writing." In other words, there is no requirement in Rule 1.5(b) or (c) that the agreement must be entered into or in writing at the time the action is commenced. Finally, we have held that an oral contingency-fee agreement was enforceable, despite Rule 1.5(c), when the attorney and client had a long-term relationship and there was no dispute as to the existence or terms of the fee agreement. *Hotel Assocs., Inc. v. Rieves, Rubens & Mayton*, 2014 Ark. 254, 435 S.W.3d 488.

Here, as demonstrated in the record, Wilson indicated that he and Ogles had agreed from the beginning of the litigation that Ogles's fee would be contingent on Wilson's success. Although the written agreement was not signed until April 19, 2019, it stated that it was retroactive to February 12, 2016, the date the complaint was filed. This appears to satisfy the dictates of Rule 1.5. Here, based on the record before us, the record supports that the circuit court considered this factor.

Finally, the State contends that the circuit court erred in finding that Ogles's acceptance of this case precluded other employment. In the hearing, Ogles explained that the instant case had been ongoing for years and limited his time with other clients. Accordingly, the record shows that the circuit court considered this factor.

In sum, in the case at bar, the circuit court considered the *Chrisco* factors in its award of attorney's fees, and we are unpersuaded by the State's argument. Accordingly, we affirm the circuit court on this point.

II. *Cross-Appeal*

A. Prejudgment Interest

19

For his sole point on cross-appeal, Wilson contends that the circuit court erred when it denied Wilson prejudgment interest on the award of fees. Wilson argues that the circuit court denied his request without explanation and that he is entitled to prejudgment interest from the date of the filing of his complaint to the date of final judgment awarding the fees. In other words, Wilson contends that prejudgment interest accrued from February 1, 2016, until July 1, 2019, the date the circuit court entered its order awarding fees. Wilson contends that this interest amount totals $65,564.76.

"Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Perkins v. Cedar Mountain Sewer Improvement District*, 360 Ark. 50, 199 S.W.3d 667 (2004); *Ozarks Unlimited Resources Co-op., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *Ray & Sons Masonry v. United States Fidelity & Guaranty Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003); *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997). This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. *Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999). Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *TB of Blytheville v. Little Rock Sign & Emblem*, 328 Ark. 688, 946 S.W.2d 930 (1997); *Wooten v. McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981)."

20

*Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 180–81, 217 S.W.3d 797, 807 (2005); *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 194, 272 S.W.3d 91, 95 (2008).

Wilson submits various numbers that he contends should be used for calculation of prejudgment interest, including, "Wilson is entitled to prejudgment interest on at least the $323,266.53 fee award." Wilson asserts that the amount of damages has been certain throughout this litigation. Wilson further contends that at the commencement of litigation, the sum was $2,547,804, after the remand of *Wilson I* the amount was $969,799.60, and finally, the amount after *Wilson I* has remained $323,266.53. The State responds that Wilson is barred by law of the case, alleging Wilson did not request prejudgment interest prior to *Wilson II*. The State further responds that prejudgment interest is not within the scope of the mandate in *Wilson II*. Finally, the State responds that Wilson is not entitled to prejudgment interest on his attorney's-fee award. Wilson replies that the damages wrongfully withheld from Wilson are the attorney's fees of $323,266.53 that he alleges have been wrongfully withheld.

Here, the cause of action is an illegal-exaction matter. In order to prevail, a method must have existed for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. In other words, there must be a definite value for the damages at the time the illegal-exaction lawsuit was filed. However, here, according to the record before us, there is not an exact value of damages that gave rise to this action. Simply put, a sum certain for the alleged damages from the statutes that were

21

challenged was not available at the time of the suit. Therefore, we affirm the circuit court's denial of Wilson's request for an award of prejudgment interest.

Affirmed on direct appeal; affirmed on cross-appeal.

KEMP, C.J., and WOOD and WOMACK, JJ., concur in part and dissent in part.

**JOHN DAN KEMP, Chief Justice, concurring in part and dissenting in part.** I agree with the majority's holding on cross-appeal to affirm the circuit court's denial of Wilson's request for an award of prejudgment interest. For the reasons articulated in my dissent in *Walther v. Wilson*, 2019 Ark. 105, at 7, 571 S.W.3d 897, 902, I respectfully dissent from the majority's holding on direct appeal.

WOOD, J., joins.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I agree with the majority's analysis regarding the issue of prejudgment interest on cross-appeal. I write separately because I disagree with the majority's decision to affirm the circuit court's award of attorney's fees on direct appeal. Based on the evidence presented by appellee Mike Wilson and his attorney of record in this matter, John Ogles, an award of $323,266.53 is not reasonable under a *Chrisco* analysis.

Ogles has presented scant evidence of his personal efforts in this case outside of obvious statements that it "took up time" and that it was a "hard case." While the timesheets of opposing counsel were able to give the circuit court a sense of the time involved in this litigation, they do nothing to establish the work Ogles himself performed–

22

–which is especially relevant in determining the reasonableness of attorney's fees for Ogles, when Wilson's own records suggest he did most of the legal work.

The majority relies on the contingency agreement between Wilson and Ogles to absolve Ogles of his burden of accounting for his time. Yet, this agreement is invalid under Arkansas Rule of Professional Conduct 1.5. Rule 1.5(c) provides that a contingency agreement "shall be in writing." Wilson acknowledged during oral argument before this court that the agreement was not in writing. A written agreement was not signed until April 18, 2019, the date this court handed down its opinion in *Wilson II.* The majority argues that Rule 1.5 does not include a requirement that contingency-fee agreements be entered into or in writing at the time an action is commenced. This argument overlooks the language of Rule 1.5(b), which requires that the fee arrangement be communicated to the client "before or within a reasonable time after commencing the representation." Taken together, subsections (b) and (c) require a contingency arrangement to be in writing and communicated to the client before or within a reasonable time after the commencement of representation. Wilson's post hoc agreement does not satisfy our rules of professional conduct. Additionally, the majority's reliance on *Hotel Assocs. v. Rieves, Rubens & Mayton*, 2014 Ark. 254, 435 S.W.3d 488, is misplaced. There, this court addressed the enforceability of an oral contingency-fee agreement between an attorney and his client, whereas in this case, Wilson seeks to enforce a contingency agreement against the State as a nonparty to the claimed contract.

23

Moreover, even if Ogles was operating under the assumption that a valid agreement existed and, as a result, did not maintain contemporaneous records of his time, he is still required to account for his time and labor under *Chrisco*. The majority cites *Phelps v. United States Credit Life Ins. Co.*, 340 Ark. 439, 10 S.W.3d 854 (2000), a contingency-fee case in which this court upheld an award of attorney's fees despite the inability of Phelps's attorney to present evidence of the actual amount of time he spent preparing the case. Although the attorney in *Phelps* was unable to furnish records of the exact amount of time he put into the case, he still submitted an estimation of his efforts in the form of a five-page itemization of particular tasks and the dates on which they were performed. Wilson argues that because the case was taken on a contingency basis, there can be no detailed itemization; however, in Wilson's own brief in support of fees, he included a motion for attorney's fees filed by Ogles in a prior contingency-fee case wherein Ogles attached an itemization of his time spent and hourly rate. Thus, it is untrue that a contingency agreement prevents itemization, as Ogles himself proves.

While no single *Chrisco* factor may dominate over the others, the circumstances of this case necessitate actual evidence of Ogles's time and labor. *See Running M Farms, Inc. v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 371 Ark. 308, 265 S.W.3d 740 (2007) (concluding that there was no indication in the circuit court's decision that the existence of a contingency-fee agreement dominated over the other factors). Here, the weight of the evidence suggests that it was Wilson, not Ogles, that performed the bulk of the legal work. With Ogles's level of involvement in this case at issue, it was unreasonable for the circuit

24

court to award a fee of $323,266.53 without any direct evidence of Ogles's work. Therefore, I must respectfully dissent from the majority's conclusion that the circuit court adequately considered the *Chrisco* factors.

WOOD, J., joins in this opinion.

*Leslie Rutledge*, Att'y Gen., by: *Brittany N. Edwards*, Ass't Att'y Gen., for appellant.

*Ogles Law Firm, P.A.*, by: *John Ogles*; and *Mike Wilson*, for appellee.